No. 56,578

STATE OF KANSAS, *ex rel.*, WILLIAM PRINGLE, County Attorney, Barton County, Kansas, *Appellee*, v. HERITAGE BAPTIST TEMPLE, INC., *et al.*, *Appellants*.

(693 P.2d 1163)

Opinion filed January 26, 1985.

*David C. Gibbs*, of Gibbs & Craze, L.P.A., of Cleveland, Ohio, argued the cause, and *Daniel Jon Loomis*, of the same firm, and *John L. Horner*, of Great Bend, Kansas, were with him on the briefs for the appellants.

Emily E. Cameron, special assistant county attorney, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an action by the State of Kansas to enjoin Heritage Baptist Temple, Inc., from operating a day-care center without a license as required by K.S.A. 65-501 *et seq.* The trial court granted the injunction and this appeal followed.

Heritage Baptist Temple, Inc., was organized in Great Bend, as a Kansas corporation in 1950 under the name of the Harrison Street Baptist Church. In 1982, the church corporate name was changed to Heritage Baptist Temple, Inc.

The church began operating a day-care center for children in 1974. The center was in operation from 1974 until 1979. During that time it was licensed by the Kansas Department of Health and Environment. In July of 1979, the church closed its day-care center and re-opened it in 1980, at which time it obtained a license which was in effect until April 15, 1983.

In April of 1983 the Temple did not renew its license, but continued to operate the day-care center without it. Heritage Baptist Temple claims it does not need a license because its operation is not a day-care center but is, rather, a "preschool ministry."

At the time of the trial, Heritage's day-care center had twenty-seven children enrolled in its program. Only six of those children's parents were members of the Heritage Baptist congregation. The hours of operation were 6:30 a.m. to 6:00 p.m. and a fee was charged for the services.

The district court held Heritage Baptist Temple, Inc's. day-care center came within the definition of K.A.R. 28-4-420(d) and that Heritage did in fact operate a day-care center without a license from the State of Kansas as required by K.S.A. 65-501 *et seq.* In granting the injunction the court further held Heritage Baptist had not proven there was a genuine religious liberty claim which would prevent the State from requiring licensure.

The sole issue is whether the trial court erred in finding Heritage Baptist Temple did not have a genuine religious liberty claim which would preclude the State from requiring its children's day-care center to be licensed.

Appellants contend the teachings of the Heritage Baptist Temple regarding its religious doctrines were not accepted by the court even though appellants presented sufficient evidence on their beliefs to invoke constitutional protection.

Evidence of the church's doctrine was presented at trial by the Heritage Baptist Temple minister, Rev. Rick Carter. Rev. Carter testified the church decided it would no longer seek licensing from the State because it did not view the day-care center as an activity open to state regulation since it was a part of the church's

ministry. As part of the church ministry, Rev. Carter stated the church believed it to be a religious activity protected by the First Amendment from interference by the State in the way of licensing.

The First Amendment to the U.S. Constitution and Section 7 of the Kansas Bill of Rights embrace two concepts: the prohibition of establishment of religion by government, and the guarantee of the free exercise of religion by all persons. It thereby prevents state compulsory religion and also safeguards the free exercise of religion. The instant case falls within the latter category, since appellants allege the free exercise of religion is impermissibly inhibited by the State licensing statutes which operate to supervise day-care centers.

The First Amendment also guarantees two types of religious freedom: the freedom to believe and the freedom to act. It is well settled that the freedom to believe is absolute, while the freedom to act is not. See *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244 (1879), and *Sherbert v. Verner*, 374 U.S. 398, 10 L.Ed.2d 965, 83 S.Ct. 1790 (1963). Conduct is subject to regulation for the protection of society, thus, the freedom to act, even when the action is in accord with one's religious convictions, is not totally free of possible legislative restrictions. See *Cantwell v. Connecticut*, 310 U.S. 296, 84 L.Ed. 1213, 60 S.Ct. 900 (1940).

It is well settled the State may regulate the health, safety and general welfare of society in a manner which may infringe upon religion without unconstitutionally invading liberties protected by the Constitution. Religious practices may be disallowed if there is a compelling State interest which outweighs the interest of the individual and his religious tenet. The necessity of such is clear. The individual cannot be permitted, even on religious grounds, to be the sole judge of his duty to obey laws enacted in the public interest. A state, therefore, may reasonably limit the free exercise of religion for the protection of society. Where the exercise of legislative power comes into conflict with freedom of religion, the validity of legislation will depend upon a weighing of the factors.

The United States Supreme Court has developed a three-part test to resolve conflicts which arise between free exercise of religion and the power of the State to enact legislation for the protection of society. See *Wisconsin v. Yoder*, 406 U.S. 205, 32

L.Ed.2d 15, 92 S.Ct. 1526 (1972). The courts must consider: (1) Does a genuine religious liberty claim exist and does the State burden violate that liberty; (2) if it does, is that violation nonetheless justified by a compelling State interest; and (3) did the State use the least intrusive means of regulation?

The first question in this case, then, is whether the maintenance of a day-care center by appellant is a genuine religious belief.

It has been held the government may not question the validity of religious belief, but may question whether the belief is in fact religious. See *United States v. Ballard*, 322 U.S. 78, 88 L.Ed. 1148, 64 S.Ct. 882 (1944).

The district court in this case found the appellants truly believed they should maintain a day-care center. That belief must also be found to be religious in order to be afforded constitutional protection. The lower court here held appellants' genuine belief was not a religious belief. The court based its decision on three findings: (1) Heritage Baptist Temple, Inc., has been licensed for nine years; (2) change in the Church's position on licensure coincided with changes which Rev. Carter, the new minister, had initiated; and (3) the existence of the child-care center was in part based on economic necessity.

Appellants argue that although the center was licensed for nine years, their beliefs developed to the point they had found licensing unacceptable. The change of belief was brought about by Rev. Carter's leadership. As to the court's last finding, appellants claim the day-care center is part of the church's ministry, and every facet of the day-care center is involved in its religion.

The State argues the trial court did not err in finding the belief was not of a religious nature which was to be afforded constitutional protection. In support the State contends that although religious instruction may be included in the curriculum and activities of the day-care center, the basic activity of operating a child-care facility involves the basic care of children — feeding, clothing, sheltering, nursing when sick, protecting from harm, and providing education. We have held that "[w]hile religious beliefs cannot be regulated, some overt acts, though in the exercise of one's religious convictions, are not totally free from legislative restriction." See *State ex rel. O'Sullivan v. Heart Ministries, Inc.*, 227 Kan. 244, 256, 607 P.2d 1102 (1980).

In *Heart Ministries,* we found some regulation of child-care establishments is absolutely necessary to insure the children are protected. 227 Kan. at 257. The State of Kansas, by its licensing statutes, K.S.A. 65-501 *et seq.,* is attempting to protect the health, safety, and welfare of the children who find themselves in day-care facilities. The State's concern is solely with the secular activities of the day-care center, not with its religious beliefs or practices. The assertion by appellants that every aspect of the center's operation is religious does not eliminate the State's ability to regulate activities which are clearly secular. The operation of the day-care center is a business operation by the church, a fee is charged for the services, and attendance is open to the public. In fact, the majority of children attending appellants' day-care center are not members of the church.

Additionally, the State notes appellants were unable to show that independent Baptist doctrine mandates all churches to have day-care centers. To the contrary, the evidence disclosed church doctrine was to operate day-care centers only where economically feasible.

Appellants' chief objection to state licensing is that it prevents the use of corporal punishment as a disciplinary tool. The court found the church had a genuine religious belief regarding the use of corporal punishment. The regulations of the department of health and environment prohibit the use of corporal punishment in schools by individuals other than the children's parents.

The State initially charges appellants lack standing to raise the issue of the regulation's prohibition on their religious practice since the church did not have a license. For support, appellee cites *Heart Ministries,* 227 Kan. 244. In that case we held the licensing of child-care facilities was necessary despite protests from a religious group that licensing infringed on the practice of its religion. One practice which was noted as prohibited was corporal punishment. The court found, however, that there are administrative remedies by which relief by way of waiver of particular regulations may be sought. Since the religious group in *Heart Ministries* had not sought to become licensed and thereby avail itself of the administrative remedies open to it, it did not have standing to question the regulations. We have consistently held administrative remedies should be exhausted before resort is made to the courts. 227 Kan. at 258.

As urged by the State, the rule of *Heart Ministries* is applicable here.·· Appellants failed to seek administrative remedies through which the corporal punishment provision could have been challenged. However, it is important to note that we have held a party need not seek administrative remedies when those remedies are known to be inadequate. The State demonstrated in this case the complete adequacy of the administrative remedy. The record indicates that in Great Bend the Berean Christian School holds a similar belief in the use of corporal punishment. The State accommodated that belief by allowing the school to contact the parents to come and administer punishment when necessary. Thus, appellants had a meaningful outlet for their concern about corporal punishment, which they refused to pursue. They thus lack standing to raise the issue.

We have no hesitation in holding the operation of a day-care center not to be the exercise of a religious activity. Religious activities are carried on in the curriculum of the day-care center. Those activities are not disturbed or burdened by licensure. The primary function of the day-care center is feeding, clothing, sheltering, protecting, entertaining and babysitting of the children of working parents for hire. Such activities are properly subject to State regulation for the protection of children. Religious practitioners cannot be permitted to exempt themselves from the law in the practice of their particular ritual, the dangers of which were recognized by Chief Justice Waite in *Reynolds v. United States*, 98 U.S. 145, 166 (1879):

"Suppose one believed that human sacrifices were a necessary part of religious worship, would it be seriously contended that the civil government . . . could not interfere to prevent a sacrifice? Or if a wife religiously believed it was her duty to burn herself upon the funeral pile of a dead husband, would it be beyond the power of the civil government to prevent her carrying her belief into practice?"

After noting the traditional condemnation of polygamy, Chief Justice Waite concluded:

"To permit [polygamy under the guise of religious liberty] would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself. Government could exist only in name under such circumstances."

Ritualistic use of poisonous snakes and other dangerous practices in religious ceremonies further justify governmental regu-

lation of religious acts as distinguished from religious belief.

In addition, the full licensure requirements do not prevent a church-run day-care center from freely pursuing its religious beliefs. The neutral application of State child-care regulations poses no threat to appellants' private religious liberty, since current regulations of child-care centers neither proscribe religious content in child-care programs nor limit the scope of religious content. If some unforeseen impediment to free exercise were to arise from enforcement of the regulation, the broad provisions allowing various waivers from the standards in cases of "undue hardships" are available to provide accommodation to the particular religious beliefs of the various sects.

This holding is supported by similar cases from other states. See *Roloff Evangelistic Enterprises v. State*, 556 S.W.2d 856 (Tex. Civ. App. 1977); *Oxford v. Hill*, 558 S.W.2d 557 (Tex. Civ. App. 1977); and *Meek v. Pittenger*, 374 F. Supp. 639 (E.D. Pa. 1974).

The trial court's finding that the operation of this day-care center is not subject to a religious liberty claim is supported by substantial competent evidence and will thus not be disturbed on appeal. The judgment of the district court is affirmed.