No. 65,670

RIVERSIDE HOSPITAL, INC., *Appellee*, v. STATE DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, *Appellant*.

(808 P.2d 1348)

Opinion filed April 12, 1991.

*Barbara J. Miller*, of Department of Social and Rehabilitation Services, argued the cause and was on the briefs for appellant.

*Patricia M. Dengler*, of Smith, Shay, Farmer & Wetta, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This action arises from an administrative proceeding in which the defendant State Department of Social and Rehabilitation Services (SRS) determined it had overpaid certain Medicaid/Medikan claims for reimbursement submitted by plaintiff Riverside Hospital, Inc., (Riverside) located in Wichita, and ordered recoupment thereof. Riverside sought judicial review of the agency's action, which was affirmed in part and reversed in part by the district court. The matter is before us on SRS's appeal from the judgment of the district court.

The pertinent facts are uncontroverted and may be summarized as follows. The Secretary of SRS administers the Kansas Medicaid/ Medikan program. K.S.A. 39-708c(a) and (s). SRS has a contract with a privately owned firm, EDS-Federal (EDS), under which said firm serves as the fiscal agent for SRS in the Medicaid/ Medikan program involved herein. Riverside is a participating Kansas Medicaid/Medikan provider. EDS audited 347 sample claims submitted by Riverside in 1986 and 1987 and, based upon what it concluded were overpayments therein, projected the error rate to all comparable claims in the period. It concluded Riverside had been overpaid $74,373.67. SRS notified Riverside of this determination and advised Riverside that it could submit rebuttal information within 15 days of the date of the notification and that it could then, if still dissatisfied with the findings, request an administrative review.

On March 4, 1988, Riverside submitted the rebuttal information. SRS reviewed the Riverside submission and accepted portions thereof. The percentage error rate was reduced from 33.9 percent to 33.42 percent, which altered the overpayment to $73,320.60. At the administrative hearing requested by Riverside, additional modifications were made which further reduced the error rate to 32.75 percent, for a total overpayment of $71,850.67. Riverside then requested a fair hearing.

On November 3, 1988, the Chief Hearing Officer affirmed the agency's decision and on March 31, 1989, the State Appeals Committee affirmed the fair hearing decision. On May 2, 1989, Riverside filed a petition for judicial review pursuant to K.S.A. 77-601 *et seq.* in the district court of Shawnee County.

The principal issues before the district court were:

1. Whether an EDS bulletin dated December 1985 was sufficient notice to Riverside that a major policy change had occurred requiring Riverside to have in its files, prior to dispensing services in non-emergency situations to Medicaid/Medikan patients, a written form from such a patient's primary care network (PCN) physician. Many of the errors found by the audit arose from the absence of these forms; and

2. Whether of the use of a sample to project an error rate on all claims for reimbursement made in the period was proper.

In its decision filed May 8, 1990, the district court affirmed in part and reversed in part. Its conclusions may be summarized as follows:

(1) the Kansas Medicaid/Medikan Bulletin, dated December 1985, was not adequate to put any health care provider on notice of a policy change, and any recoupment of claims based on the bulletin constituted arbitrary and capricious action;

(2) the Medicaid/Medikan handbook amendment, dated May 1987, provides sufficient notice of the change in policy, clearly set forth the requirements, and recoupment of claims for services after May 1987 was correct;

(3) the use of a sample to project an error rate for all claims during the period in question was not supported by any substantial facts or competent evidence, in violation of K.S.A. 77-621(7), and violated Riverside's fundamental due process rights.

The district court did not attempt to calculate the amount of money improperly recouped by SRS and left this to counsel to determine. The matter is before us on SRS's appeal from the judgment of the district court.

Before proceeding to the discussion of the issues, it is appropriate to cite the statute controlling the judicial review of the agency action herein.

K.S.A. 77-621 provides:

"(a) Except to the extent that this act or another statute provides otherwise:

(1) The burden of proving the invalidity of agency action is on the party asserting invalidity; and

(2) the validity of agency action shall be determined in accordance with the standards of judicial review provided in this section, as applied to the agency action at the time it was taken.

"(b) The court shall make a separate and distinct ruling on each material issue on which the court's decision is based.

"(c) The court shall grant relief only if it determines any one or more of the following:

(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

(3) the agency has not decided an issue requiring resolution;

(4) the agency has erroneously interpreted or applied the law;

(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

(8) the agency action is otherwise unreasonable, arbitrary or capricious.

"(d) In making the foregoing determinations, due account shall be taken by the court of the rule of harmless error."

We turn now to the issues presented.

## EFFECTIVE DATE OF NOTIFICATION

Prior to December 1985, it was necessary for a Medicaid/Medikan patient's PCN physician to approve the treatment before the hospital could seek reimbursement. Such approval could be by a notation somewhere in the file by the physician or simply a notation that the physician had verbally approved the treatment.

In December 1985, EDS mailed its Kansas Medicaid/Medikan Bulletin (No. 85-6) to all participating hospitals, including Riverside. The bulletin contained a variety of material of interest to participating hospitals. The pertinent item therein is as follows:

"PCN PROGRAM EXPANDS TO 5 ADDITIONAL COUNTIES

"Effective January 1, 1986 the Kansas Primary Care Network program will be implemented in the following additional counties: Shawnee, Douglas, Leavenworth, Wyandotte and Johnson. Sedgwick and Saline counties will continue in the PCN Program. Ottawa county will be dropped from PCN participation January 1.

"The Primary Care Network (PCN) is a program established by the Kansas Department of Social and Rehabilitation Services (SRS) to allow access to quality medical care in an efficient and economical manner. The PCN physician, as Case Manager, agrees to provide medical care to a selected group of recipients, or when necessary, refer the recipient to another provider. The recipients are restricted to services provided by the physician case manager and may not, except in emergencies, receive any medical services from another provider without a written referral from the physician case manager."

SRS's position, upheld throughout all administrative proceedings herein, is that Riverside was put on notice by this last sentence in the bulletin that as of January 1, 1986, no claim for reimbursement for non-emergency services would be allowed un-

less a written referral form from the physician case manager had been obtained.

The district court determined that the December 1985 bulletin was inadequate notice to Riverside of this major policy change and that SRS's recoupment based thereon constitutes arbitrary and capricious action. We agree.

The caption indicates that the subject matter of the relevant part of the bulletin is the expansion of the PCN program to five additional counties. Inasmuch as Sedgwick County was already in the program with Riverside as a participating member, the addition of five new counties would hardly alert Riverside that a major policy change had been made affecting its procedure and claims. Additionally, the date of January 1, 1986, obviously refers to when the five new counties would join the program. The quoted bulletin squib says nothing about what form must be used for referral, what information must be included thereon, or how the referral forms are to be handled.

The district court further held that the Medicaid/Medikan handbook amendment dated May 1987 provided sufficient notice of the policy change and that recoupment for any claim paid thereafter which did not have the required referral form was appropriate. There is no issue before us relative to the propriety of this determination.

Before turning to the next issue, one other point needs some discussion. SRS contends that the district court's decision relative to the December 1985 bulletin was based in part upon the fact that the bulletin was issued by EDS rather than SRS. We have carefully reviewed the district court's memorandum decision and we do not believe such was the case. The format and contents of the bulletin were the determinative factors in the district court's determination that the bulletin provided inadequate notice to Riverside of the policy change. This non-issue arises by virtue of the district court's referral at one point to the bulletin as having been sent by EDS rather than SRS.

## PROJECTION OF ERROR BASED UPON SAMPLE (EXTRAPOLATION)

For its next issue, SRS contends the district court erred in concluding that its determination of recoupment based upon ex-

trapolation of sample error was improper and violative of Riverside's fundamental due process rights. Notwithstanding our determination of the preceding issue, this question is before us as it affects the recoupment on claims for services rendered after May 1987 through the end of the audit period which lacked the referral forms as well as recoupment based on other defects throughout the period.

Before discussing this issue, it is appropriate to state SRS's role in administering the program involved herein.

Medicaid is a federal program established by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.* (1988), whereby the federal government participates financially in the payment of medical services to individuals who meet categorical eligibility requirements. A state, in order to obtain federal financial participation, must comply with federal statutes and regulations regarding the Medicaid program. See 42 U.S.C. § 1396a (1988).

The Secretary of SRS is responsible for the administration of public welfare programs in Kansas, including medical assistance programs, and has specific authority for developing the programs and rules and regulations in support thereof. K.S.A. 39-701 *et seq.*, K.S.A. 39-708c.

SRS, the Kansas Medicaid agency, is required by federal law to have auditing procedures in administering the program.

42 C.F.R. § 456.3 (1990) provides:

"The Medicaid agency must implement a statewide surveillance and utilization control program that—

(a) Safeguards against unnecessary or inappropriate use of Medicaid services and against excess payments;

(b) Assesses the quality of those services;

(c) Provides for the control of the utilization of all services provided under the plan in accordance with Subpart B of this part; and

(d) Provides for the control of the utilization of inpatient services in accordance with Subparts C through I of this part."

The use of sampling in Medicaid utilization control is authorized by 42 C.F.R. § 456.22 (1990), which provides:

"To promote the most effective and appropriate use of available services and facilities the Medicaid agency must have procedures for the on-going evaluation, on a sample basis, of the need for and the quality and timeliness of Medicaid services."

SRS determined the overpayment percentage based upon the overpayments made in the sampled cases and projected or extrapolated the error percentage to all claims paid in the audited period. Our determination of the first issue will alter the actual percentage rate, but the basic issue remains as to the propriety of determining recoupment based upon extrapolation of a sample.

This is a matter of first impression before us, but several other jurisdictions have considered and upheld the sampling and extrapolation technique for determining overpayments in comparable circumstances. See *Illinois Physicians Union v. Miller*, 675 F.2d 151 (7th Cir. 1982); *State of Ga., Dept. of Human Resources v. Califano*, 446 F. Supp. 404 (N.D. Ga. 1977); *Tomlin v. DDS*, 154 Mich. App. 675, 398 N.W.2d 490 (1986); *Quality v. Social Services*, 141 Mich. App. 597, 367 N.W.2d 390 (1985); *Del Borrello v. PennDPW*, 96 Pa. Commw. 507, 508 A.2d 368 (1986).

The *Illinois Physicians Union* case contains an excellent discussion on this subject. Particularly noteworthy are the following excerpts:

"As we see it, the issue is not whether overpayments may be statistically presumed, but whether the state, in attempting to preserve its welfare monies, may place the burden on the physician to demonstrate that the Department's calculations are inaccurate. We begin our analysis by noting that this case does not involve an irrebuttable presumption for the Department does not automatically presume liability. Rather, it conducts an initial audit on a substantial portion of the physician's records by examining each individual record in the sample. Thus, overpayments are actually proven with respect to the audited cases.

"Section 1396a requires physicians to keep records necessary to fully disclose the extent of services rendered and to make such records available to state and federal governments as a condition of receiving Medicaid payments. 42 U.S.C. § 1396a(a)(27). Payment is made only after the billing forms are submitted evidencing the right to reimbursement. At all times the burden is on the physician to prove entitlement to welfare monies. Thus, the Department's presumption that the percentage of error in the total number of cases is the same as the percentage of error in the audited cases does not have the procedural effect of shifting any burden.

. . . .

"However, Salazar [a plaintiff-appellant] does not merely challenge the validity of the Department's calculations, but contends that any formula for sampling and extrapolation is improper per se. We cannot agree, for the use of statistical samples has been recognized as a valid basis for findings of fact in the context of Medicaid reimbursement. *State of Georgia v.*

*Califano*, 446 F. Supp. 404 (N.D. Ga. 1977). In *State of Georgia*, the court specifically considered, and rejected, the same argument Salazar raises here. It noted that the use of statistical samples to audit claims and arrive at a rebuttable initial decision was reasonable where the number of claims rendered a claim-by-claim review a practical impossibility. The court concluded that it was not unreasonable to place the burden on the challenging party to present evidence to rebut the statistical sample.

. . . .

"We find nothing in this procedure, however, to suggest that extrapolation inherently works to the detriment of the physician. Sampling and extrapolation is no more likely to result in a situation where the physician will be required to return monies when there has been no overpayment than in a situation where the Department will not recoup the full amount overpaid. The audit procedures are not arbitrary, capricious or inviduously discriminatory.

. . . .

"There is no merit to Salazar's contention that the Department procedures do not comport with due process. The process due varies with the circumstances and various factors must be considered when evaluating administrative procedures. These factors are: (1) the private interest, affected by the official action; (2) the risk of an erroneous deprivation of that interest; and (3) the governmental interest, including the function involved and the fiscal and administrative burdens that other procedures would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 (1976).

"We agree with Salazar that she had a substantial interest in receiving her full statutorily-allotted compensation for services actually rendered. However, in balancing the interests of the parties, the balance is heavily weighed in favor of the Department. *The Department processes an enormous number of claims and must adopt realistic and practical auditing procedures. We agree with the district court's conclusion that, in view of the enormous logistical problems of Medicaid enforcement, statistical sampling is the only feasible method available. Accord, State of Georgia v. Califano*, 446 F. Supp. 404 (N.D. Ga. 1977)." 675 F.2d at 154-57. (Emphasis supplied.)

In its memorandum decision herein, the district court stated the following relative to this issue:

"Finally, petitioner contends that SRS has taken its property without due process in violation of the due process requirements of both the federal and state constitutions. It appears that after the exit conference concerning the audit in question, SRS sent a letter to Riverside detailing its findings. . . . In that letter of February 4, 1988, from Ms. Hazlett [an SRS manager] to the hospital administrator, it was stated:

" 'The tentative $10,708.38 overpayment outlined on the attachment to this letter represents 33.9 percent of the total $31,634.06 paid for the sample of the cases. Projecting the 33.9 percent error rate over the $219,391.37

paid to Riverside Hospital between April 1, 1986, and September 30, 1987, results in an apparent projected overpayment of $74,373.67.'

"Ultimately, the 'projected overpayment' resulting from the administrative review was $71,850.67. This was based upon an overpayment on the sampled cases of $10,358.87 which represents 32.75 percent of the total paid for the sampled cases. This percentage was projected over the entire amount paid to Riverside Hospital between April, 1986, and September 30, 1987. The net result which was obtained after the administrative hearing was that Riverside was required to reimburse SRS for a sum substantially in excess of the amount of claims that were actually found to be not in compliance based upon nothing more than speculation or conjecture. There is no proof to support the assumption that the remaining files lacked the requisite form. The agency reviewed a sample of the petitioner's files and found . . . what they deemed to be a 33.9 percent error rate. The agency then projected that error rate to all claims paid by the agency to petitioner during the period in question and proceeded to recoup that entire amount. . . . Such a projection is a finding not supported by any substantial facts or competent evidence. The agency did not review any of the non-sample claims and there was no factual basis upon which to find that these claims were not in compliance. While this action is violative of the petitioner's fundamental due process rights, it is invalid under K.S.A. 77-621(7). For the foregoing reasons, the agency's action in requiring recoupment from the petitioner based on a projection applied to unaudited claims over the entire period is reversed."

The district court's analysis fails to consider why the record of the agency proceeding is devoid of evidence on the propriety of extrapolating from a sample, in general, or the particular extrapolation procedures utilized herein. The reason for this void is that this whole area was never an issue at the agency level. It surfaced for the first time in the district court. Riverside could have challenged the utilization of samples to project recoupment by submitting evidence in rebuttal, but it did not. It presented neither claim nor evidence that the mechanical means employed to determine overpayment was flawed or incorrect in any pertinent respect as it proceeded through the various agency review levels. Under these circumstances, it would be surprising to find evidence in the record on this subject as it was extraneous to what was actually in dispute. The battle at the agency level centered on whether the December bulletin gave notice to Riverside of the policy change.

We must conclude that no issue relative to the propriety of extrapolation from a sample, in general, or the particular extrap-

olation techniques utilized herein was properly before the district court. Therefore, the district court's determination that the agency's actions were not supported by the evidence and violated Riverside's fundamental due process rights must be reversed. The case must be remanded to the district court to determine the proper amount of recoupment.

The judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.