No. 76,085

CLARA GAMBLIAN, as Administrator of the Estate of CHARLES R. "RICK" GAMBLIAN, Deceased, and as mother and next friend of CHARLES STOVER (GAMBLIAN) and STEVEN GAMBLIAN, minor children, and RACHELLE RILES, as mother and next friend of KRYSTAL GAMBLIAN, minor child, *Appellants*, v. THE CITY OF PARSONS, KANSAS, and THE STATE OF KANSAS, KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, *Appellees*.

931 P.2d 1238

Opinion filed January 24, 1997.

*Frederick R. Smith*, of Pittsburg, argued the cause and was on the brief for appellants.

*Patrick G. Reavey*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Overland Park, argued the cause, and *Michael K. Seck*, of the same firm, was with him on the brief for appellee City of Parsons.

*Michael George*, associate general counsel, argued the cause, and *Beth Lange Engle*, staff counsel, was with him on the brief for appellee Kansas Department of Social and Rehabilitation Services.

The opinion of the court was delivered by

ABBOTT, J.: This is a wrongful death case filed on behalf of three minor children whose father, Charles R. "Rick" Gamblian, died as a result of a tractor accident while working for the City of Parsons,

Kansas, pursuant to a contract with the Kansas Department of Social and Rehabilitation Services (SRS).

The trial court granted summary judgment to the defendants, SRS and the City of Parsons, on the theory that the exclusive remedy for Gamblian's death lies in the Workers Compensation Act and that Gamblian was a statutory employee. This appeal followed.

The decedent was receiving public assistance. Federal funds are made available to the states under the Jobs Opportunity and Basic Skills Training Program, which sets minimum standards that the individual states who participate in the program must provide for the program participants. The federal laws, rules, and regulations are not mentioned by the parties or the trial judge and will not be considered in this appeal. The State of Kansas adopted a KanWork program and, as part of that program, the Community Work Experience Program (CWEP). CWEP is administered by SRS. In order to remain eligible for public assistance, Gamblian was required to participate in job training activities through CWEP.

SRS entered into a contract with the City of Parsons, whereby the City of Parsons agreed to establish a CWEP work site to give work experience to able-bodied persons receiving public assistance from SRS. As part of that contract, SRS agreed "[t]o provide protection to the participants in such projects comparable to the protection provided by the workmen's compensation laws of Kansas, pursuant to K.S.A. 39-708c(g)." SRS assigned Gamblian, through CWEP, to work for the City of Parsons.

While performing his assigned duties for the City of Parsons, Gamblian suffered injuries which resulted in his death.

CWEP is authorized by K.S.A. 39-708c(g), which provides:

"(g) The secretary [of social and rehabilitation services] shall sponsor, operate or supervise community work experience programs whereby recipients of assistance shall work out a part or all of their assistance and conserve work skills and develop new skills. The compensation credited to recipients for the programs shall be based upon an hourly rate equal to or in excess of the federal minimum wage hourly rate. The programs shall be administered by the secretary. In the programs, *the secretary shall provide protection to the recipient under the workmen's compensation act or shall provide comparable protection* and may enter into cooperative arrangements with other public officials and agencies or with private not-for-profit corporations providing assistance to needy persons in developing,

subject to the approval of the secretary, the programs under this section." (Emphasis added.)

As provided in K.S.A. 39-708c(g), SRS could have decided to protect CWEP participants under the Workers Compensation Act by filing a written statement of election with the director which indicated that SRS accepted the provisions of the Workers Compensation Act. K.S.A. 44-505(b); K.S.A. 44-508(a)(3). The City of Parsons, as the entity for which the assistance recipients were performing the community service work, also could have elected to cover CWEP participants under the Workers Compensation Act. K.S.A. 44-508(a)(3). In this case, neither SRS nor the City of Parsons elected to cover CWEP participants under the Workers Compensation Act. Instead, as provided in the Cooperative Work Site Agreement, SRS utilized the second option available under K.S.A. 39-708c(g) and agreed to provide CWEP participants in Parsons with protection comparable to the Workers Compensation Act.

When Gamblian died while working as a CWEP participant for the City of Parsons, SRS paid his funeral bill and medical expenses. However, SRS did not pay any death benefits to Gamblian's minor children. In an effort to receive death benefits, the minors' guardians contacted an attorney on behalf of the minors. This attorney sent a letter inquiring about a death benefits claim, which ended up at the SRS General Counsel's office.

SRS responded with a letter, dated April 5, 1994, that provided in pertinent part:

"Our agency [SRS] is self-insured, as are most state agencies, and has not filed an election to cover employees or KanWork participants under the workers' compensation act. Rick Gamblian was not an SRS employee but a CWEP participant. As a CWEP participant, he is excluded from the worker's [sic] compensation act.

"In this case, SRS has either paid or has arranged to pay for the medical treatment Mr. Gamblian received following the accident and the funeral expenses, *which we feel meets our duty of providing comparable coverage* as required by statute and by terms of the worksite agreement. If you . . . wish to pursue a claim, please present your position in writing to [the] . . . Director of Workforce Development . . . ." (Emphasis added.)

In response to this letter, the minors' attorney sent a letter to the Director of Workforce Development, dated May 18, 1994, which provided in pertinent part:

"It is our desire to pursue a claim regarding the death of Rick Gamblian during the course of his employment through the KanWork program.

"I have been in contact with Richard Dearth, City Attorney for the City of Parsons, who advises me that the contract with the State of Kansas required that the State of Kansas assume all liability for injuries suffered and directed that I contact SRS in this regard.

"I would like to pursue this matter further and would like to discuss this matter either with you initially or in combination with the City of Parsons, so that we may attempt to resolve this matter without further and unnecessary delays.

"I would appreciate being advised as to how you would like to proceed in this matter. I will be preparing claims for compensation which will be filed in this matter, both against the City of Parsons and against SRS in order to protect the rights of the minor children involved.

"I will await your response."

According to the plaintiffs, this letter languished with the Director of Workforce Development for 6 months without any response or guidance from SRS on how to file a claim under its "comparable protection" plan. The plaintiffs contend that they filed this case because they did not receive any help on how to file a claim and because they found the comparable protection plan provided by SRS to be inadequate. In response, SRS argues that it did not allow this letter to languish without a response. Instead, SRS interpreted the letter as stating that the plaintiffs were going to file a claim with SRS for death benefits. Thus, according to SRS, it chose to wait to respond until the plaintiffs had filed their claim. Once the plaintiffs had filed their claim for death benefits under the "comparable protection" plan, SRS planned to either grant or deny the claim. The plaintiffs never filed a claim with SRS. Instead, the plaintiffs filed this action against SRS and the City of Parsons, claiming damages for the wrongful death of the Rick Gamblian. SRS and the City of Parsons answered, but SRS also sent a settlement letter which provided:

"As you know, pursuant to K.S.A. 39-708c(g) the Department of SRS is obligated to provide protection to recipients under the Workers Compensation Act or comparable protection under cooperative arrangements. Thus, since it is clear that Mr. Gamblian was working with the City of Parsons under a cooperative agreement with SRS for Kan-Work recipients, the Department will honor its commitment under K.S.A. 39-708c(g).

"A review of K.S.A. 44-510(b)(1) provided guidance as towhom we should make payment and K.S.A. 44-511(b)(6) indicates the rules for the amount of pay. At the time of Mr. Gamblian's death he was a person performing community service work as defined in K.S.A. 44-508(1). Thus, the gross average weekly wage as determined by K.S.A. 44-511(b)(6)(B) is $37.50, presenting a compensation rate of $25.00 per week. This amount will be paid to the administrator of the estate of [sic] the children.

"I believe the benefits should commence with the date of death, which I believe to be February 1, 1994. In order to bring payments current to February 1, 1995, for example, a first lump sum payment of $1,253.50 would be required, $417.79 for one child and $835.71 for the other two children. . . .

. . . .

". . . Should you decide to take a lump sum payment of this amount, please advise. In the meantime, if you have any remaining medical bills that have not been paid, please provide copies of the bills.

"Once I hear from you on how to proceed, I can have the Department issue the checks and a release of liability. Thank you for your consideration."

Apparently, the plaintiffs rejected this offer.

The trial court held that Gamblian was a statutory employee of the City of Parsons, pursuant to K.S.A. 44-503(a), and that the plaintiffs' exclusive remedy for the death of Gamblian lies in the Workers Compensation Act. The plaintiffs appealed and, pursuant to K.S.A. 20-3017, the case was transferred to this court.

SRS raises the question of jurisdiction. SRS points out that the plaintiffs did not file a claim with SRS requesting death benefits before they filed this lawsuit. Thus, SRS contends that the plaintiffs did not exhaust the administrative remedies necessary to receive comparable protection from SRS. Since the plaintiffs did not exhaust their administrative remedies before filing this claim, SRS argues, the trial court did not have jurisdiction to hear the case and therefore this court does not have jurisdiction to hear the case.

An appellate court always has jurisdiction to decide if it has jurisdiction to hear a case. See *J. Enterprises, Inc. v. Board of Harvey County Comm'rs*, 253 Kan. 552, 554, 857 P.2d 666 (1993). If SRS was covered by the Workers Compensation Act or did provide adequate comparable protection, then the plaintiffs were required to exhaust any administrative remedies before they could properly file this suit in the district court, if they could file the suit at all. However, if SRS did not elect to apply the Workers Compensation Act

and did not provide adequate comparable protection, then the plaintiffs would not have been required to exhaust inadequate administrative remedies before they could have properly filed suit in the district court. If the latter situation is the case, then the district court had jurisdiction to hear the case, and this court has jurisdiction to hear the appeal. Thus, this court has jurisdiction to determine if it has jurisdiction by analyzing whether the plaintiffs were required to exhaust administrative remedies under the Workers Compensation Act or under the comparable protection plan mandated by statute before they could properly file this action.

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought." *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260, 891 P.2d 435 (1995). "Summary judgment is proper where the only question or questions presented are questions of law. [Citation omitted.]" *Fletcher v. Nelson*, 253 Kan. 389, 391, 855 P.2d 940 (1993). In reviewing the trial court's conclusions of law, the appellate court exercises an unlimited, de novo standard of review. See *Dickerson v. Kansas Dept. of Revenue*, 253 Kan. 843, 844, 863 P.2d 364 (1993).

The plaintiffs concede that the Workers Compensation Act is to be liberally construed and applied. As K.S.A. 44-501(g) provides:

"It is the intent of the legislature that the workers compensation act shall be liberally construed for the purpose of bringing employers and employees within the provisions of the act to provide the protections of the workers compensation act to both. The provisions of the workers compensation act shall be applied impartially to both employers and employees in cases arising hereunder."

Despite this liberal application of the Workers Compensation Act, the plaintiffs challenge the trial court's conclusion that the Workers Compensation Act applies to their claim in this particular case. In support of this argument, the plaintiffs point to K.S.A. 39-708c(g), which provides that in the CWEP programs, the Secretary of SRS shall provide protection to the recipient under the workers compensation act *or* shall provide comparable protection.

According to the plaintiffs, the use of the word "or" signifies that the Workers Compensation Act *may* apply to this claim. However, "comparable protection," instead of the Workers Compensation Act, may also apply to the claim. The plaintiffs assert that the Workers Compensation Act, as opposed to comparable protection, only applies to this claim if SRS specifically elected to apply the Workers Compensation Act to Gamblian as a CWEP participant. In support of this argument, the plaintiffs cite to K.S.A. 44-508(a) and (b). ·

K.S.A. 44-508(a)(3) defines the term "employer" as used in the Workers Compensation Act as,

"for the purposes of community service work, the entity for which the community service work is being performed [the City of Parsons] and the governmental agency which assigned the community service work [SRS], if any, *if either such entity or such governmental agency has filed a written statement of election with the director* to accept the provisions under the workers compensation act for persons performing community service work and in such case such entity and such governmental agency shall be deemed to be the joint employer of the person performing the community service work and both shall have the rights, liabilities and immunities provided under the workers compensation act for an employer with regard to the community service work, *except that the liability for providing benefits shall be imposed only on the party which filed such election with the director, or on both if both parties have filed such election with the director;* for purposes of community service work, 'governmental agency' shall not include any court or any officer or employee thereof and any case where there is deemed to be a 'joint employer' shall not be construed to be a case of dual or multiple employment." (Emphasis added.)

Further, K.S.A. 44-508(b) defines "employees" for workers compensation purposes as "persons performing community service work, but only to the extent and during such periods as they are performing community service work and *if an election has been filed* . . . to extend coverage to such persons."

Based on these statutes, the plaintiffs argue the Workers Compensation Act only applied if SRS had filed a written statement of election with the Director of Workers Compensation requesting that the Workers Compensation Act cover CWEP participants such as Gamblian. The plaintiffs point out, and SRS readily agrees, that SRS did not file an election requesting that the Workers Compensation Act cover CWEP participants in Parsons, Kansas. Since no

election was filed, the plaintiffs assert that the Workers Compensation Act does not apply to Gamblian or this claim. Instead, according to the plaintiffs, SRS was required to provide comparable protection to Gamblian.

Despite the trial court's conclusion that the Workers Compensation Act applied to the plaintiffs' claim, SRS agrees with the plaintiffs that the Workers Compensation Act does not directly cover their claim. SRS acknowledges that it did not elect to have the Workers Compensation Act cover CWEP participants. Instead, according to SRS, it has decided to provide protection comparable to the Workers Compensation Act to CWEP participants, as made clear in the Cooperative Work Site Agreement and as required by K.S.A. 39-708c(g). Thus, it is clear that the Workers Compensation Act does not apply to the plaintiffs' claim against SRS.

Since SRS did not elect to protect CWEP participants under the Workers Compensation Act, SRS was required, by K.S.A. 39-708c(g), to provide comparable protection to CWEP participants. When the trial court granted summary judgment to SRS, it stated: "I think that SRS has set up an appropriate administrative procedure and provides an appropriate administrative remedy."

The plaintiffs challenge the trial court's conclusion, alleging that SRS's comparable protection and the administrative procedures the plaintiffs must use to receive such comparable protection are wholly inadequate. The plaintiffs point out that a party is not required to seek or exhaust administrative remedies, even if such remedies are considered the party's exclusive remedy, if the remedies are inadequate. See *State ex rel. Pringle v. Heritage Baptist Temple, Inc.*, 236 Kan. 544, 549, 693 P.2d 1163 (1985) ("[I]t is important to note that we have held a party need not seek administrative remedies when these remedies are known to be inadequate."); *Cussimanio v. Kansas City Southern Ry. Co.*, 5 Kan. App. 2d 379, 385-86, 617 P.2d 107 (1980) ("Exhaustion of administrative remedies is a matter within the sound discretion of the courts and is not required when administrative remedies are inadequate."); see also *Zarda v. State*, 250 Kan. 364, 369, 826 P.2d 1365, *cert. denied* 504 U.S. 973 (1992) ("[P]laintiffs should be permitted to seek court relief without first presenting the case to an administra-

tive agency [if] no purpose [would be] served by requiring plaintiffs to exhaust administrative procedures."). *Zarda* also pointed out that " 'where a *full and adequate* administrative remedy is provided in tax matters by statute, such remedy must *ordinarily* be exhausted before a litigant may resort to the courts.' " 250 Kan. at 367 (quoting *State ex rel. Smith v. Miller*, 239 Kan. 187, Syl. ¶ 1, 718 P.2d 1298 [1986]).

Based on these rules, the plaintiffs contend that the procedures and remedies under SRS's comparable protection plan which are available when a CWEP participant dies from injuries received on the job are inadequate. Since the administrative procedures and remedies available under SRS's comparable protection plan are inadequate, the plaintiffs assert, they were not required to seek or exhaust such administrative remedies before they brought this wrongful death action in the district court.

The plaintiffs allege that the remedies and procedures available under SRS's comparable protection plan are inadequate because SRS has not adopted any rules or regulations explaining how a CWEP participant or his or her family can file a claim for benefits. SRS has not drafted any manuals or policies, nor has it created any guidelines to establish what benefits are available under comparable protection and who is eligible for such benefits. In fact, SRS has not even formally determined if an average weekly wage figure is necessary to determine death benefits under the comparable protection plan, and, if so, it has not formally stated what the average weekly wage for CWEP participants is. Finally, the plaintiffs point out that if SRS has adopted the Workers Compensation Act as its format for comparable protection, as SRS argues it has, then SRS has failed to establish any rules or regulations formally indicating that it has in fact has adopted the Workers Compensation Act as its format to determine the appropriate comparable protection.

Further, the plaintiffs point out that SRS has not even offered a definition of comparable protection. The term "comparable protection" is never defined within the Kansas statutes or the Kansas Administrative Regulations. This is especially unacceptable, according to the plaintiffs, because SRS has the authority to make

rules and regulations defining and clarifying what comparable protection is. In making this argument, the plaintiffs cite to *Riverside Hospital, Inc. v. State Department of SRS*, 248 Kan. 609, 614, 808 P.2d 1348 (1991), which provides: "The Secretary of SRS is responsible for the administration of public welfare programs in Kansas . . . and has specific authority for developing the programs and rules and regulations in support thereof. K.S.A. 39-701 *et seq.*, K.S.A. 39-708c."

In response, SRS points to the discretionary language used in K.S.A. 75-3304, which provides: "The secretary of social and rehabilitation services *may* adopt rules and regulations relating to all forms of social welfare." Since this statute uses the word "may" and not the word "shall," SRS contends that it was allowed to adopt rules and regulations regarding comparable protection if it wanted to, but that it was not required to do so. Moreover, SRS contends that it had no reason to adopt any special rules or regulations regarding comparable protection because it provides comparable protection simply by using the general SRS administrative procedures to review a claim and by using the Workers Compensation Act as a formula to determine the validity and value of a claim.

First, SRS discusses the administrative procedures which a CWEP participant or his or her family must utilize in order to receive comparable protection. SRS points to K.S.A. 75-3306, which provides in pertinent part:

"(a) The secretary of social and rehabilitation services . . . shall provide a fair hearing for any person who is an applicant, client, inmate, *other interested person* or taxpayer who appeals from the decision or final action of any agent or employee of the secretary. The hearing shall be conducted in accordance with the provisions of the Kansas administrative procedure act. [K.S.A. 77-501 *et seq.*]

"It shall be the duty of the secretary of social and rehabilitation services to have available in all intake offices, during all office hours, forms for filing complaints for hearings, and appeal forms with which to appeal from the decision of the agent or employee of the secretary. The forms shall be prescribed by the secretary of social and rehabilitation services and shall have printed on or as a part of them the basic procedure for hearings and appeals prescribed by state law and the secretary of social and rehabilitation services.

"(b) The secretary of social and rehabilitation services shall have authority to investigate (1) any claims and vouchers and persons or businesses who provide services to the secretary of social and rehabilitation services or to welfare recipi-

ents, (2) the eligibility of persons to receive assistance and (3) the eligibility of providers of services.

"(c) The secretary of social and rehabilitation services shall have authority, when conducting investigations as provided for in this section, to issue subpoenas; compel the attendance of witnesses at the place designated in this state; compel the production of any records, books, papers or other documents considered necessary; administer oaths; take testimony; and render decisions. . . .

. . . .

"(i) The department of social and rehabilitation services shall not be required to provide a hearing if: . . . (3) the matter was not timely submitted to the department of social and rehabilitation services pursuant to regulation or other provision of law; or (4) the matter was not submitted in a form substantially complying with any applicable provision of law."

See *Van Valkenburgh v. State Board of Social Welfare*, 211 Kan. 754, Syl. ¶ 2, 508 P.2d 875 (1973) ("The remedy of a person denied welfare benefits to which he is legally entitled is through administrative review under K.S.A. . . . 75-3306, followed by judicial review under K.S.A. 60-2101, and not by way of a suit against the state department of social welfare for damages.").

Based on K.S.A. 75-3306 and the Kansas Administrative Procedure Act, K.S.A. 77-501 *et seq.*, SRS contends that Gamblian's family, as an "interested party," could have requested a final decision from any SRS employee regarding its claim for death benefits. If the family disagreed with the decision made, it could have appealed the decision, requesting a hearing to be conducted under the Administrative Procedure Act. K.S.A. 75-3306(a). The Administrative Procedure Act sets up time limits for requesting a hearing (K.S.A. 77-511); notice requirements for a hearing (K.S.A. 77-518); a discovery process (K.S.A. 77-519; K.S.A. 77-522); and rules of evidence (K.S.A. 77-524; K.S.A. 77-525). If Gamblian's family disagreed with the outcome of the hearing, then the family could have appealed the decision to a district court under the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* According to SRS, this fair hearing and appeal process set up under K.S.A. 77-3306, K.S.A. 77-501 *et seq.*, and K.S.A. 77-601 *et seq.* is a free-standing system which gives CWEP participants and their families a procedure to follow in order to receive comparable protection. SRS contends that this free-standing procedure

is *adequate* and that SRS was not required, under 39-708c(g), to set up a separate procedural system for CWEP participants to use in order to gain comparable protection.

SRS contends that it uses the Workers Compensation Act as a formula to determine what substantive remedies should be provided to CWEP participants under its comparable protection plan. In more detail, SRS explains that under its comparable protection plan, valid claims for medical expenses and funeral expenses of CWEP participants are paid out of appropriate Medicaid program funds. Further, injury or death benefits are determined by using formulas enumerated in the Workers Compensation Act and paid out of SRS department funds. As an example, SRS points to how the Workers Compensation Act determines death benefits. Each minor child of an employee killed on the job is compensated each week with the average weekly wage of the deceased employee, divided by the total number of minor children the employee had, until the child turns 18. SRS contends that its comparable protection plan also pays out death benefits to the minor children of CWEP participants killed on the job in this same manner. The Workers Compensation Act specifically deems $37.50 per week to be the average weekly wage of a CWEP participant whose employer has elected to cover the worker under the Workers Compensation Act. K.S.A. 44-511(b)(6)(B). Thus, under its comparable protection plan, SRS claims that it would use the Workers Compensation Act figure of $37.50 as Gamblian's average weekly wage and, utilizing the same formula as the Workers Compensation Act, pay out his death benefits based on this figure.

Finally, SRS asserts that its adequate comparable protection plan, as described above, is the plaintiffs' exclusive remedy, thereby preventing the plaintiffs from bringing this wrongful death action in the district court. SRS supports this argument by pointing to K.S.A. 44-508(b). This statute defines an employee under the Workers Compensation Act, who is forced to accept the Workers Compensation Act as his or her exclusive remedy, as a person performing community service work, whose employer has elected to cover the employee under the Workers Compensation Act. See also K.S.A. 44-508(a)(3) (defining an employer under the Workers

Compensation Act, who is entitled to the exclusive remedy protection of the Act, as an entity for which community service is being performed or the governmental agency who assigned the community service work if the entity or agency has elected to apply the Workers Compensation Act to an employee). Based on these statutes, SRS points out that the exclusive remedy doctrine would have applied to Gamblian, SRS, and Parsons under the Workers Compensation Act. Thus, according to SRS, the legislature must have also wanted this exclusive remedy doctrine to apply to Gamblian, SRS, and Parsons under SRS's comparable protection plan. As such, SRS argues that its comparable protection plan is the plaintiffs' exclusive remedy and that the plaintiffs cannot bring this wrongful death action in the district court.

We do not know what the legislature intended by, or why the legislature provided for, a comparable protection plan. Legislative history gives no clue, and federal requirements seem in part to be inconsistent with such language.

Nonetheless, we have no hesitancy in holding that the legislature was attempting to incorporate CWEP participants into the Workers Compensation Act but also gave SRS an option to draw up a comparable plan. The option of a comparable plan allowed SRS to have some give and take concerning benefits, deadlines, mandatory payments, and penalties under the Workers Compensation Act. However, SRS did not provide anything in the way of rules or regulations regarding the comparable protection which it was required to provide. Thus, if SRS is going to make the rules up as it proceeds, then SRS must have a floor below which it may not go and that is the protection afforded by the Kansas Workers Compensation Act.

If the plaintiffs were trying to enforce rights under the Workers Compensation Act instead of filing a wrongful death action, we would hold that the K.S.A. 39-708c(g) comparable protection guarantee obligates SRS, under the circumstances and facts before us, to at least provide benefits to Gamblian's survivors in an amount not less than that provided by the Kansas Workers Compensation Act because that is what we think the legislature intended by the term "comparable protection." If the survivors have that right, then

they must also accept the less desirable aspects of comparable protection, *i.e.*, the exclusive remedy doctrine.

We thus hold that the plaintiffs have not exhausted their administrative remedies and that we have no jurisdiction to hear this appeal. Plaintiffs' remedy is to file a claim for comparable protection with SRS, proceeding under the Kansas Administrative Procedure Act. At oral argument, SRS assured this court that plaintiffs' deadline to file a claim for comparable protection with SRS had not yet expired.

As to the City of Parsons, the trial court reached the correct conclusion. Legislative intent is clear that the legislature intended SRS and the entity for which the community service work is being performed, the City of Parsons, to be treated as a joint employer insofar as the exclusive remedy provision applies. It does not make sense that SRS would be protected by the exclusive remedy provision while the City of Parsons would be exposed to tort liability. If this were the case, then it appears that the City of Parsons could turn around and recover the amount for which it was held liable to the worker from SRS because SRS agreed in the Cooperative Work Site Agreement that it would assure responsibility for the comparable protection required by K.S.A. 39-708c(g). The legislature obviously never intended such a result. Once the exclusive remedy provision is applied to SRS, it follows that it also applies to the City of Parsons. The trial court did not err in granting summary judgment to SRS or the City of Parsons in the wrongful death action.

Affirmed.