No. 47,090

Maynard Blake, Claimant, *Appellant*, v. Hutchinson Manufacturing Company, Respondent, and American Motorists Insurance Company, Insurance Carrier, *Appellees*.

(516 P. 2d 1008)

Opinion filed December 8, 1973.

*Calvin McMillan*, of Kaplan, McMillan and Anderson, of Wichita, was on brief for the appellant.

*Aubrey G. Linville*, of Clark, Mize, Linville and Miller, Chartered, of Salina, was on the brief for the appellees.

*Per Curiam:* This workmen's compensation claim is for a back injury sustained on March 27, 1969. Written claim for compensation was served on November 25, 1970. The only question presented for review is whether the claim was served within the time required by K. S. A. 1972 Supp. 44-520a, which requires that it be served within 200 days after the accident, "or in cases where compensation payments have been suspended within two hundred (200) days after the date of the last payment of compensation."

The underlying question is *when* the employer or its carrier last paid "compensation" by way of furnishing medical treatment, for it is well established that "The furnishing of medical aid to an injured employee constitutes the payment of compensation so that a claim filed within due time of the date when the last medical aid was furnished claimant by respondent was filed in time." (*Bishop v. Dolese Brothers Co.*, 155 Kan. 288, 124 P. 2d 446, Syl. ¶ 2. See also, *Richardson v. National Refining Co.*, 136 Kan. 724, 18 P. 2d 131, Syl. ¶ 3; *Larrick v. Hercules Powder Co.*, 164 Kan 328, 188 P. 2d 639, Syl. ¶ 1.)

The essential facts are these: After his injury the claimant consulted Dr. Richard O'Donnell, a local physician. He was not the "company doctor" but, as the record shows, the appellees consented to and adopted Dr. O'Donnell as the treating physician. Dr. O'Donnell first referred the claimant to Dr. Roy B. Coffey of Salina, a specialist who continued to treat the claimant with the acquiscense of the appellees.

The insurance carrier paid the bills of Drs. O'Donnell and Coffey and a hospital bill at Salina, and paid weekly compensation to the claimant to January 1, 1970. Payment of weekly compensation was discontinued after that date for no reason that appears in the record, but in April of 1970, the claimant called the insurance carrier and, after talking to someone named Shirley and complaining that he had not received a compensation check since the first of the year, was sent a check from the insurance company paying his weekly compensation to April 16, 1970. This was the last weekly compensation paid. Obviously, if the 200 day limitation period under the statute runs from April 16, 1970, when the last payment was made, the claim, which was served on November 25, 1970, was not in time, as 223 days had elapsed.

However, this is not the complete factual picture. Also in April, 1970, apparently about the same time as the conversation with Shirley which resulted in the resumption of weekly compensation payments, claimant went back to see Dr. O'Donnell, the original approved physician, complaining of the same injury. This time Dr. O'Donnell referred the claimant, not back to Dr. Coffey, but to Dr. Richard Kiene, an orthopedist with the Dickson-Diveley Clinic in Kansas City, Missouri. The claimant did not know why Dr. O'Donnell didn't want him to go back to Dr. Coffey, but it appears that the claimant himself wanted an opinion from someone

other than Dr. Coffey, although not necessarily that of Dr. Kiene. There is nothing in the record to indicate that the authority of Dr. O'Donnell as the treating and referring physician was ever revoked by the appellees, and it must be presumed, in the absence of evidence to the contrary, that the authority continued having once been established as a going relationship.

When Dr. Kiene examined the claimant he considered that he needed the aid of a neurologist and sent the claimant to Dr. H. Richard McFarland, also of Kansas City. Dr. McFarland in turn, on Mr. Blake's second visit with him, had the claimant hospitalized from June 25 to June 30, 1970, for further testing.

The reports of the doctors and the bills for their services on this second referral, and the bill from the hospital, all went to the insurance carrier. The bills were not paid, but neither were they rejected. The carrier apparently misunderstood the import of the medical reports and did not associate them with the injury for which it had been paying compensation. As a result it ignored both the reports and the bills. No bills were sent to claimant, nor was there ever any notice to him that they would not be paid. He assumed, rightfully we think, that they had been or would be paid by the insurance company.

There was never any notice either to the doctor or to the claimant that the authority of Dr. O'Donnell had been revoked. The inference which claimant was entitled to draw from the action of the carrier in complying with his request in April to make further payment of weekly compensation was that of continuing authority for both treatment and referral.

As we see it, this case falls squarely within the decision in *Johnson v. Skelly Oil Co.,* 180 Kan. 275, 303 P. 2d 172. In that case we said:

".  .  . Under the facts as disclosed by the record claimant was warranted in assuming Dr. Christmann was respondent's doctor and that medical aid and hospitalization would continue to be available to him until he was released. Respondent's liability to claimant is based upon the contract of employment, which includes the provisions of the Workmen's Compensation Act. (*Workman v. Kansas City Bridge Co.,* 144 Kan. 139, 58 P. 2d 90.) Under this act it had the duty to provide the services of a physician or surgeon and such medical, surgery and hospital treatment as might be reasonably necessary to cure or relieve the effects of claimant's injury. (G. S. 1949, 44-510.) *Once it sent claimant to its doctor and assumed the responsibility of providing medical aid, claimant had the right to rely on respondent's action, and was relieved of serving written claim during the time he received compensation in*

*the form of such medical aid. . . .* Respondent cannot relieve itself of liability by attempting to withdraw from furnishing medical aid to claimant as it attempted to do in June, 1954, when it informed Dr. Christmann that it did not consider claimant's injury compensable, and would not pay him for his services. Moreover, taking respondent's contention on its face, *notice of termination of medical service to its doctor is not notice of such termination to the claimant.* (*Angleton v. Foster Wheeler Construction Co.,* 177 Kan. 134, 138, 276 P. 2d 325.)" (pp. 280-281. Emphasis added.)

If the insurance carrier did not intend to recognize the authority of Dr. O'Donnell in April, 1970, and the resulting chain of referrals from him to St. Luke's Hospital, it owed the duty to notify the doctors and the claimant of its discontinuance of medical service or the repudiation of services rendered. Even if it had notified the doctors and the hospital of such intention, under the *Johnson* case that would not have been notice to the claimant.

There was testimony by the carrier's claims supervisor that compensation payments were discontinued on April 16, 1970, because "of a report received from Dr. Coffey that the claimant was able to work." The record shows that Dr. Coffey's statement was qualified. He testified at the hearing according to the narrated testimony as follows:

". . . Dr. Coffey last saw the claimant in March of 1970, doing well. (Coffey deposition page 6) Dr. Coffey testified that claimant should be in a job that does not require a lot of lifting and stooping and bending; that 'he is out of the business of manual labor; that he should restrict his lifting to not much over twenty to thirty pounds, and that carefully;' and that anything over that would be imposing some risk upon a recurrence, or further damage to his back."

This is hardly an unqualified statement that claimant was able to return to work. Certainly it could not provide a basis for repudiating the respondent's duty to provide medical service without notice to the doctors and to the claimant.

The trial court and the director, in holding that the claim was not timely, felt that the carrier did not actually mislead the claimant into believing treatment was authorized, and on that basis distinguished *Johnson v. Skelley Oil Co.,* supra. As indicated, we cannot reach any other conclusion from the record but that he was misled.

Both the director and trial court relied on *La Fever v. Olson Drilling Co.,* 142 Kan. 431, 49 P. 2d 967, and *Riedel v. Gage Plumbing & Heating Co.,* 202 Kan. 538, 449 P. 2d 521, the director noting that he was "hard put to reconcile" these cases with *Johnson.* While

both cases held that the respondent need not show the claimant had acutal knowledge that compensation had ceased in order to show that the claim was not timely, we do not understand either case to say that the employer or its carrier may lull a claimant into a reasonable belief that medical services were being or would be provided, and then after repudiating the obligation plead that the claim was not timely. That, as we see it, was the net effect of the respondents' conduct in this case, even though they may have had reasonable grounds for not promptly processing the Kansas City medical bills. Both cases recognize that the furnishing of medical service constitutes payment of "compensation" for the purpose of determining when the last "payment of compensation" was made under the statute. In each case the facts were such that the claimant should have known that services were not being provided, whether he had actual knowledge or not.

We note that both decisions below, denying compensation, were based in part on the view that Dr. Coffey rather than Dr. O'Donnell was the "treating physician." Hence, they reasoned, the change to the Kansas City doctors required approval under the director's rules (K. A. R. 51-9-10 [3]). We view the situation a little differently, as noted above. We think Dr. O'Donnell was the treating physician and stood in the same shoes as a "company doctor." Dr. Coffey and the Kansas City doctors were all specialists to whom the treating physician made referral. Both referrals came within the specific exception of the cited rule as cases "referred to a specialist by the attending physician when the nature of the case warrants."

We therefore hold that, in accordance with *Johnson v. Skelly Oil Co.,* supra, where the employer and insurance carrier have once authorized a course of treatment for a workman they cannot effect a "suspension" of such compensation, and start the workman's claim time running, merely by failing to pay the medical bills as they are received. At least where the respondents are on notice that the workman is seeking additional treatment on the assumption that he is still covered they are under a positive duty to disabuse him of that assumption if they intend to rely on the 200 day statute.

It follows that in this case the appellees, who had authorized the original treatment by Dr. O'Donnell, were under obligation to the claimant for the St. Luke's Hospital confinement June 25-30, 1970.

Since this was authorized treatment, *i. e.,* "compensation," claimant had 200 days from June 30 to serve his claim. Accordingly the claim was served and filed in time.

The findings of the examiner were in favor of the claimant. On review by the director and in the district court the decision went against the claimant, but only on the issue of the timeliness of the claim. For the reasons stated above the judgment is reversed and the case remanded for appropriate action by the district court on the merits of the claim.