(946 P.2d 94)
No. 77,039

VICTORIA L. SHIELDS, *Appellant*, v. J. E. DUNN CONSTRUCTION COMPANY and BUILDERS' ASSOCIATION SELF-INSURANCE FUND, *Appellees*.

Opinion filed July 11, 1997.

*Kathleen M. Lynch* and *Dennis L. Horner*, of Horner and Duckers, Chartered, of Kansas City, for appellant.

*John David Jurcyk*, *Wade A. Dorothy*, and *Douglas M. Greenwald*, of McAnany, Van Cleave & Phillips, P.A., of Lenexa, for appellees.

Before GERNON, P.J., RULON, J., and JAMES L. BURGESS, District Judge, assigned.

BURGESS, J.: Victoria Shields appeals from an order of the Workers Compensation Board (Board) finding her claim barred by the statute of limitations. We affirm.

Shields sustained a work-related injury on April 17, 1990, when she fell down a flight of stairs. She reported the incident to her employer, and an accident report was prepared. Her employer directed her to medical care. She was first examined on April 18, 1990, and was referred for physical therapy. Shields received approximately 2 weeks of physical therapy, during which time the physical therapist prescribed a TENS unit for Shields' use. A TENS unit is an electrical apparatus that applies an electrical stimulus to the body to help reduce pain. Shields began using the unit in late April 1990. According to Shields' testimony, she was given no instruction from either the physical therapist or the doctor on how long to use the device or when it should be returned to the medical supplier. She further testified that she was given a year's worth of supplies to operate the unit.

On May 15, 1990, the medical supplier sent Shields a letter informing her that the unit belonged to Builders' Association Self-Insurance Fund (Builders' Association) and that Shields should call and arrange for the return of the unit when she had discontinued its use. The letter also included a toll free number to order additional supplies. A carbon copy of the letter was also sent to Builders' Association. Shields testified that as far as she knew, she was to use the unit until the pain went away.

After receiving 1 week of physical therapy, Shields returned to the doctor on May 9, 1990, and was released to full duty work, without restrictions, beginning May 14, 1990. A return appointment was scheduled on May 29, 1990. Shields never returned for her follow-up appointment. Shields testified that she was given a "return to work" slip that the doctor had written on, but she stuck the slip in her purse and did not read it. From Shields' testimony, it appears her return appointment may have been written on the bottom of the slip.

Between May 9, 1990, and January 29, 1991, Shields did not seek any medical treatment from any health care provider, even though she continued to experience pain and assumed she could

return for medical treatment. On January 29, 1991, Shields saw a second doctor, who later referred her to a third doctor. Shields filed her written claim for compensation on February 6, 1991. At some point, Shields contacted an attorney, and Builders' Association authorized her to seek treatment from the third doctor in conjunction with her separate claim for compensation in Missouri. Shields was treated between February 20, 1991, and May 8, 1991. In June 1991, Shields ran out of supplies for the TENS unit and called to order additional supplies. Her request for additional supplies was denied.

The length of time between Shields' last examination in May 1990 and the date of her claim for compensation is 273 days. However, Shields maintains that her continued use of the TENS unit until June 1991 constitutes "payment of compensation" within the meaning of the Workers Compensation Act, and, therefore, the time for filing her claim did not begin to run until that time. If Shields' continued use of the TENS unit is sufficient to toll the statute of limitations, her claim is timely filed.

By award dated December 27, 1995, the administrative law judge made a finding that based on her use of the TENS unit until June 1991, Shields had met her burden of proving that she was still receiving authorized medical treatment at the expense of the employer when she filed her claim for compensation. On de novo review, the Board reversed, finding that Shields' unsupervised use of the TENS unit did not constitute ongoing medical treatment for purposes of tolling the 200-day limitation period of K.S.A. 44-520a(a).

Shields filed a motion for rehearing, which the Board denied for lack of jurisdiction. Shields appeals.

K.S.A. 44-556 specifically subjects workers compensation appeals to the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* That Act limits the relief granted on appeal. K.S.A. 77-621(c). K.S.A. 77-621(c)(4) and (7) are relevant for purposes of this appeal and state as follows:

"The court shall grant relief only if it determines any one or more of the following:

. . . .

(4) the agency has erroneously interpreted or applied the law;

. . . .

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act."

The 1993 amendments to the workers compensation laws limit review of all orders issued after October 1, 1993, to questions of law. K.S.A. 44-556(a). However, whether the Board's findings of fact are supported by substantial competent evidence is a question of law. *Berry v. Boeing Military Airplanes*, 20 Kan. App. 2d 220, 223, 885 P.2d 1261 (1994).

An appellate court will uphold findings supported by substantial evidence even though there is evidence of record which would have supported contrary findings. In workers compensation cases, substantial evidence is evidence possessing something of substance and relevant consequence and carrying with it fitness to induce conviction that the award is proper, or furnishing substantial basis of fact from which the issue tendered can be reasonably resolved. *Angleton v. Starkan, Inc.*, 250 Kan. 711, 716, 828 P.2d 933 (1992); *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 285, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

K.S.A. 44-520a(a) requires a workers compensation claimant to serve a written claim for compensation upon the employer within 200 days after the accident, or in cases where compensation payments have been suspended, within 200 days after the date of the last payment of compensation. *Lawrence v. Cobler*, 22 Kan. App. 2d 291, 294, 915 P.2d 157, *rev. denied* 260 Kan. 994 (1996). The furnishing of medical care to an injured employee is considered the payment of compensation under the Workers Compensation Act when authorized, either expressly or by reasonable implication, by the employer. *Sparks v. Wichita White Truck Trailer Center, Inc.*, 7 Kan. App. 2d 383, Syl. ¶¶ 1, 2, 642 P.2d 574 (1982). If an employer is on notice that an employee is seeking treatment on the assumption that treatment is authorized by the employer, the employer is under a duty to disabuse the employee of that assumption if the employer expects the 200-day limitation to take

effect. *Blake v. Hutchinson Manufacturing Co.*, 213 Kan. 511, 515, 516 P.2d 1008 (1973).

This case involves a conflict between the employer's duty to notify its injured employee that the employer will no longer pay for continued medical treatment and the duty of the injured employee to return for scheduled appointments with his or her treating physician.

Shields has experienced no reduction in the level of pain she associates with her injuries. It is reasonable to conclude that a worker in Shields' condition would seek out her treating physician for continued treatment, rather than suffer for 8 months before seeking additional medical care from an alternative source. Additionally, Shields' failure to return for the May 29, 1990, follow-up appointment could be viewed as a unilateral decision by Shields to abandon her medical treatment. Had she returned as scheduled, her injuries might well have been addressed through an authorized course of treatment. Although her continued use of the TENS unit is uncontroverted, the unsupervised use of the unit, in conjunction with her testimony that she continued to experience debilitating pain from her injuries and her conflicting testimony regarding her ability to return for treatment, leads us to the conclusion that Shields was not operating under a reasonable assumption that her medical treatment was ongoing. She was released back to work with no restrictions. As far as her employer or its insured knew, this was the last time Shields received any medical treatment. It would be difficult to say that her employer was "on notice" of Shields' ongoing medical treatment, notwithstanding the reference made to the TENS unit in her medical reports.

Although Kansas does not require that the employer have actual knowledge that a claimant is receiving medical treatment, it would be unreasonable to find that an employer was on notice of ongoing medical treatment where the injured employee fails to return to his or her treating physician as scheduled. The record supports the Board's finding that Shields abandoned her medical treatment after May 9, 1990. Accordingly, Shields failed to file her claim within 200 days of the last day she received medical treatment from her employer.

Shields argues that she was unaware of the follow-up appointment and that her testimony on the issue is uncontroverted and, therefore, conclusive. The medical reports indicate that Shields was to return for a follow-up appointment on May 29, 1990. Shields testified that she was given a "return to work" slip after her May 9, 1990, appointment that she stuck in her purse. Her testimony indicates that the date of the appointment was written on the bottom of the slip. From this evidence, the Board could reasonably conclude that Shields knew or should have known that she was scheduled for an appointment on May 29, 1990. An injured employee has some duty to keep abreast of his or her course of treatment.

After Shields filed her claim for compensation, her employer authorized additional treatment. Shields maintains that the subsequent authorization of medical treatment revived her claim under the Act.

Shields raised this issue for the first time in her motion for rehearing. Because the Board has no authority to rule on such a motion, this issue has not been properly preserved for appeal. See *Bolyard v. Kansas Dept. of SRS*, 259 Kan. 447, 455, 912 P.2d 729 (1996); *Waln v. Clarkson Construction Co.*, 18 Kan. App. 2d 729, 731, 861 P.2d 1355 (1993).

The ruling of the Board is affirmed.