(79 P.3d 179)
No. 87,899 ■

PHILIP W. HAYWOOD, *Appellee,* v. CESSNA AIRCRAFT COMPANY
and KEMPER INSURANCE COMPANIES, *Appellants.*

 Opinion filed August 16, 2002.

*Kirby A. Vernon*, of Wichita, for appellants.

*Andrew L. Oswald*, of Hutchinson, for appellee.

Before GREEN, P.J., WAHL, S.J., and JOHN J. BUKATY, JR., District Judge, assigned.

GREEN, J.: Cessna Aircraft Company (Cessna) and its insurance carrier, Kemper Insurance Companies (Kemper), appeal an award by the Workers Compensation Board (Board) to Phillip W. Haywood. The award allowed a 79% permanent partial work disability. On appeal, Cessna and Kemper argue (1) that Haywood is not entitled to work disability; (2) that substantial evidence does not support the finding that Haywood's back injury arose out of the course of his employment with Cessna; and (3) that the Board erred in calculating Haywood's task loss. We affirm.

Haywood, a 21-year employee with Cessna, began to experience pain and swelling in his left elbow in June 1995. Haywood was diagnosed with tennis elbow and was given an accommodated position. Haywood began developing additional problems in both his left and right arms and was referred to an orthopedic surgeon who diagnosed bilateral tennis elbow and pinched nerves. Haywood continued working in the accommodated position. Haywood's condition spread into his hands and wrists, and he was diagnosed with mild bilateral carpal tunnel syndrome. Haywood underwent carpal tunnel surgeries in November 1996 and April 1997.

In May 1997, Haywood was referred by Cessna to a work hardening program. During his first day of work hardening, Haywood was asked to squat with a bar. While doing so, he felt something pull in his back, and he lost his balance and fell against the wall. Haywood's back injury worsened as he continued to work in his accommodated position. In February 1998, Haywood was offered and accepted a deburring job. Shortly thereafter, it was determined that the deburring position exceeded Haywood's work restrictions,

and he was offered another accommodated position involving painting and prepping work.

Haywood testified that the paint helper position was outside his work restrictions because he had to hold onto air lines. Additionally, Haywood had difficulty painting engine parts because they were too heavy for him to lift and he had trouble holding onto the paint gun. The only job Haywood could perform involved loading and unloading parts on a conveyor. Haywood was originally told that there would be five jobs in that area that he could rotate to; however, that proved not to be the case.

Even when doing the light duty jobs, Haywood noticed that his hands and elbows would swell, he would have difficulties with his back, and he would have pain down both legs. Haywood notified Cessna that he was no longer physically able to continue with the paint helper position. Haywood last worked for Cessna in March 1998. He was awarded social security disability benefits beginning in August 1998 and was granted retirement from Cessna in January 1999.

Haywood filed two workers compensation claims against Cessna, one for the injuries to his upper extremities and one for the back injury. He was evaluated by Dr. Philip Roderick Mills, who found that Haywood had sustained a 14% impairment to the body as a whole for the upper extremity injuries. Dr. Mills did not rate Haywood's back condition because he found that the back injury was not work related. Haywood was also evaluated by Dr. Pedro A. Murati, who found that he had a 17% whole person impairment for the upper extremity injuries. Dr. Murati also found that Haywood suffered a 10% whole person impairment for the back injury. Dr. Murati opined that Haywood had suffered a combined 41% functional impairment to the body as a whole for the injuries suffered while working for Cessna. Haywood was also evaluated by Jerry Hardin, a personnel consultant, who found that he had sustained a 81% task loss. Drs. Mills and Murati agreed with Hardin's determination that Haywood had suffered a task loss of 81%.

The administrative law judge (ALJ) awarded Haywood compensation based on a 41% permanent partial disability to the body as a whole on a functional basis but awarded nothing for work disa-

bility. Haywood appealed to the Board. The Board found that Haywood was eligible for work disability because he was not employed at 90% of his pre-loss wages when his claim was filed. The Board also found that Haywood had 79% permanent partial general disability and awarded him money damages.

*Standard of Review*

K.S.A. 44-556(a) specifically subjects workers compensation appeals to the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* That Act limits the relief granted on appeal. See K.S.A. 77-621(c). K.S.A. 77-621(c) states that the court shall grant relief only if it determines any one or more of the eight conditions stated are present, including the following:

"(4) the agency has erroneously interpreted or applied the law;

. . . .

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act."

In 1995, K.S.A. 44-556(a) was amended to limit this court's review of an order entered by the Board to questions of law. Nevertheless, whether the Board's findings of fact are supported by substantial evidence is a question of law. *Griffin v. Dale Willey Pontiac-Cadillac GMC Truck, Inc.,* 268 Kan. 33, Syl. ¶ 1, 991 P.2d 406 (1999).

"In workers compensation cases, substantial evidence is " 'evidence possessing something of substance and relevant consequence and carrying with it fitness to induce conviction that the award is proper, or furnishing substantial basis of fact from which the issue tendered can be reasonably resolved." [Citation omitted.]' *Angelton v. Starkan, Inc.,* 250 Kan. 711, 716, 828 P.2d 933 (1992)." *Foulk v. Colonial Terrace,* 20 Kan. App. 2d 277, 285, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

Findings supported by substantial evidence will be upheld by an appellate court even though evidence in the record would have supported contrary findings. *Shields v. J. E. Dunn Constr. Co.,* 24 Kan. App. 2d 382, 385, 946 P.2d 94 (1997). The appellate court

will not reweigh evidence or evaluate witnesses' credibility. *Bradford v. Boeing Military Airplanes*, 22 Kan. App. 2d 868, 871, 924 P.2d 1263, *rev. denied* 261 Kan. 1084 (1996).

*Work Disability*

Cessna and Kemper argue that the Board erred in awarding Haywood work disability. First, Cessna and Kemper maintain that Haywood is precluded from work disability compensation because he refused to accept accommodated work. Specifically, Cessna and Kemper contend that Haywood is not entitled to work disability because, but for Haywood's own inaction, he would be employed in an accommodated position making the same salary he was making before his upper extremity injuries.

K.S.A. 44-510e(a) governs permanent partial general disability compensation. The pertinent portion of the statute provides that

"[a]n employee shall not be entitled to receive permanent partial general disability compensation in excess of the percentage of functional impairment as long as the employee is engaging in any work for wages equal to 90% or more of the average gross weekly wage that the employee was earning at the time of the injury."

The ALJ determined that Haywood was not entitled to a work disability, but did not specify its reasons for that finding. The Board awarded Haywood a permanent partial work disability of 79% based in part on its finding that the paint helper position offered to Haywood as an accommodated position was outside his work restrictions. Accordingly, we must determine whether substantial evidence supports the Board's finding that the paint helper position offered to Haywood was not an accommodated position.

Dr. Mills testified that he reviewed a videotape depicting the tasks that made up the paint helper position and opined that this position was within the work restrictions he placed on Haywood, provided there was task rotation. Haywood sent a letter to Dr. Mills in which he stated that it was difficult for him to perform the job tasks of the paint helper position and that there was very little job rotation in the position. Moreover, Dr. Murati testified that the paint helper position was not within the restrictions he placed on Haywood because the job required too much bending. Based on Dr. Murati's testimony that the paint helper position was outside

Haywood's work restrictions, we find that substantial evidence supports the Board's finding that the paint helper job was not an accommodated position.

Although the paint helper position was not within Haywood's work restrictions, he, however, attempted to perform the job. The fact that Haywood attempted to perform the paint helper position distinguishes this case from *Foulk*, 20 Kan. App. 2d 277, because in that case the employee refused an offer of accommodated employment. The *Foulk* court found that the employee failed to establish a work disability because the accommodated position was within the worker's ability and the worker refused to perform the accommodated position. 20 Kan. App. 2d at 284. Here, even though the accommodated position offered to Haywood was not within his work restrictions, he attempted to perform the job. As a result, we find that the Board did not err in determining that the paint helper job was not an accommodated position.

Cessna and Kemper also argue that Haywood is not entitled to work disability because he can perform the jobs he had in the previous 15 years and, as a result, is capable of earning 90% of his preinjury wage. To support their argument that Haywood is able to earn 90% of his preinjury wages, Cessna and Kemper rely on a statement in the task performance capacity assessment produced by Hardin. In his report, Hardin stated that "[t]aking into consideration Mr. Haywood's physical health, education, training and tasks performed over his past work history before the injury, there was comparable substantial, gainful employment he had the ability to perform."

Cessna and Kemper's argument is wholly without merit. The statement that "there *was* comparable substantial, gainful employment" is clearly referring to work Haywood could have performed before he was injured. (Emphasis added.) Not only is the clause in the past tense but also it is immediately preceded by the phrase "before the injury." As a result, the record does not support Cessna and Kemper's contention that Haywood could have performed substantial, gainful employment after his injury. In fact, the record supports the opposite finding. In his deposition, Hardin testified that Haywood would have difficulty locating employment within

his current work restrictions. We find that substantial evidence supports the Board's finding that Haywood is not capable of earning 90% of his preinjury wage. As a result, the Board did not err in determining that Haywood is entitled to work disability.

*Work-related Back Injury*

Cessna and Kemper further assert that substantial evidence does not support the Board's finding that Haywood's back condition arose out of and in the course of his employment with Cessna. Instead, Cessna and Kemper insist that Haywood's back condition is the result of injuries sustained in a 1969 car accident.

To receive an award of compensation, a claimant must prove that he or she sustained personal injury by accident arising out of and in the course of his or her employment. K.S.A. 44-501(a). The Board found that Haywood's back injury stemmed from the incident at work hardening and, as a result, was work related.

Dr. Mills testified that he could not say within a reasonable degree of medical certainty that Haywood's back problems were caused by the incident at work hardening. Conversely, Dr. Murati testified that the back injury was work related. This finding, unfortunately, is obscured by Dr. Murati's mistaken initial report that the back injury resulted from a car accident which occurred when Haywood was traveling to work hardening. Nevertheless, Dr. Murati clarified his position during his deposition that his finding of causation was not affected by the fact that the injury occurred at work hardening. Dr. Murati knew of the 1969 car accident and that Haywood had back surgery as a result of that accident. Nevertheless, Dr. Murati stated that Haywood's back condition was the result of his employment at Cessna. Although the evidence may have supported a contrary determination, we will not reweigh the evidence. Substantial evidence supports the Board's finding that Haywood's back injury was work related.

*Task Loss*

Finally, Cessna and Kemper argue that the Board erred in its calculation of Haywood's task loss. The Board adopted the task loss

assessment prepared by Hardin and approved by Drs. Mills and Murati.

Hardin testified that he evaluated Haywood's job tasks within the context of all of Haywood's other tasks to determine whether that task, when included with the other tasks, exceeded Haywood's work restrictions. Stated another way, Hardin excluded tasks that were repetitive in nature, even if that task by itself was within Haywood's work restrictions, if that task combined with other repetitive tasks consumed more than 30% of Haywood's time at work. For example, Hardin excluded the task of rolling rubber mats, even though Haywood was required to perform that task only 2% of the time, because all of the repetitive tasks Haywood performed for that job totaled 78% of his workday. Hardin excluded all of the repetitive tasks for that job because Drs. Mills and Murati restricted Haywood to occasional repetitive tasks, or tasks which consumed less than 30% of Haywood's workday. Drs. Mills and Murati reviewed the task list created by Hardin and agreed that Haywood suffered a task loss of 81%.

K.S.A. 44-510e(a) describes task loss as "the extent, expressed as a percentage, to which the employee, in the opinion of the physician, has lost the ability to perform the work tasks that the employee performed in any substantial gainful employment during the fifteen-year period preceding accident." The Kansas appellate courts have not addressed the correct method for analyzing task loss under the statute. As a result, we are required to interpret K.S.A. 44-510e(a). Interpretation of the statute is a question of law over which we have unlimited review. *Burton v. Rockwell International*, 266 Kan. 1, 5, 967 P.2d 290 (1998). Although we do give deference to the agency's interpretation of the law, if such interpretation is found to be erroneous, we are to take corrective action. *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, Syl. ¶ 9, 834 P.2d 368 (1992).

Cessna and Kemper argue that K.S.A. 44-510e(a) requires individual analysis of each job task in light of the physician's restrictions to determine whether the employee is capable of performing that particular task. The statute, however, does not specify that individual analysis of each job task is required. Instead, the statute

requires an examination of "the *extent* . . . to which the employee . . . has lost the ability to perform the work tasks . . . ." (Emphasis added.) K.S.A. 44-510e(a). If an employee who is restricted to occasional repetitive use of his hands was required to repetitively use his hands 90% of the time, he clearly has lost the ability to perform those repetitive work tasks. It makes no difference how many repetitive tasks he was required to perform because his job responsibilities required more repetitive use of his hands than was allowed by his work restrictions. As a result, we find that the Board did not err in interpreting K.S.A. 44-510e(a) to allow for aggregation of job tasks in determining Haywood's task loss.

Affirmed.