(94 P.3d 715)
No. 91,397

VIRGIL BRUCE McCOMB, *Appellee*, v. STATE OF KANSAS, WYANDOTTE COUNTY SHERIFF, and KANSAS DEPARTMENT OF CORRECTIONS, *Appellants*.

Opinion filed July 23, 2004.

*Timothy G. Madden,* of Kansas Department of Corrections, for appellant.

*Carl E. Cornwell,* of Olathe, for appellee.

Before MARQUARDT, P.J., MALONE, J., and ERIC S. ROSEN, District Judge, assigned.

MALONE, J.: The State of Kansas, the Wyandotte County Sheriff, and the Kansas Department of Corrections (KDOC) appeal the district court's order granting Virgil Bruce McComb's K.S.A. 2003 Supp. 60-1501 petition. McComb was convicted of aggravated indecent liberties with a child, served time in prison, and was ultimately placed on postrelease supervision. He has always maintained his innocence. The sole issue is whether McComb's postrelease supervision can be revoked for his failure to participate in a sexual abuse treatment program (SATP) which requires McComb to accept responsibility for his crime. This is an issue of first impression.

*Facts and procedural background*

On August 28, 1996, McComb was convicted by a jury of four counts of aggravated indecent liberties with a child. The victim was his 10-year-old granddaughter. McComb received a sentence of 73 months' incarceration, followed by 24 months' postrelease supervision. At trial, McComb maintained he was not guilty.

McComb continued to claim his innocence throughout his incarceration. McComb was enrolled in the prison SATP, but he refused to sign an "admission of guilt." As a result, McComb lost privileges and benefits, including good time credits. McComb was first released from prison in April 2002. One of the conditions of his release was participation in a recommended SATP. The SATP is recognized by the parties as a therapeutic treatment program. The program requires the participant to admit guilt for the underlying offense on the theory that the participant cannot be treated for a problem until responsibility is accepted.

McComb reported to his therapy sessions but refused to sign an admission of guilt. In August 2002, following a preliminary hearing before the KDOC and a final hearing before the Kansas Parole Board (Board), McComb was found to have violated the conditions of his release. He was returned to prison and served 133 days in custody.

McComb was again released from prison on the condition that he successfully complete the same treatment program. Again, McComb reported to his therapy sessions but refused to sign the admission of guilt. Following a preliminary and final hearing, McComb was found to be in violation of the terms of his release and was again returned to prison. McComb served another 120 days.

After McComb was released for the third time, he told the therapist that he was guilty of the crime. Two weeks later, McComb again denied his guilt and was expelled from the program. A third revocation process was initiated against McComb. This time McComb waived his preliminary hearing before the KDOC and also waived his final hearing before the Board. Instead, on July 22, 2003, McComb filed a K.S.A. 2003 Supp. 60-1501 petition, claiming that the SATP condition of his release violated his Fifth

Amendment privilege against self-incrimination and his Fourth Amendment right to be free from unreasonable seizure.

The KDOC's answer asserted that McComb's waiver of his hearing before the Board constituted a failure to exhaust administrative remedies. The KDOC also argued that the SATP condition was constitutional as applied to McComb.

Following an evidentiary hearing, the district court granted McComb's petition. On the waiver argument, the district court found that the parties had "stipulated" that if McComb had asserted his right to preliminary and final hearings, probable cause would have been found to revoke his release. On the merits of McComb's claim, the district court found that the Board's action in revoking McComb's postrelease supervision was "arbitrary and capricious and constitutes an abuse of discretion and a denial of due process of law." The district court ordered that McComb be released from prison and that he be allowed to serve the balance of his postrelease supervision term without the SATP condition.

This timely appeal follows.

### Standard of review

"In reviewing a district court's decision reviewing an agency action, the appellate court must first determine whether the district court observed the requirements and restrictions placed upon it and then make the same review of the administrative agency's action as does the district court. [Citations omitted.]" *Connelly v. Kansas Highway Patrol*, 271 Kan. 944, 964, 26 P.3d 1246 (2001), *cert. denied* 534 U.S. 1081 (2002).

"While habeas corpus is the appropriate procedure for reviewing decisions of the Kansas Parole Board (Board), appellate review is limited to determining if the Board complied with the applicable statutes and whether its action was arbitrary or capricious." *Brown v. Kansas Parole Board*, 262 Kan. 903, Syl. ¶ 2, 943 P.2d 1240 (1997); see *Swisher v. Hamilton*, 12 Kan. App. 2d 183, 185, 740 P.2d 95, *rev. denied* 242 Kan. 905 (1987).

"An inmate's claim brought pursuant to K.S.A. 60-1501 *et seq.* must be based upon deprivation of a constitutional right or be subject to summary dismissal." *Ramirez v. State*, 23 Kan. App. 2d

445, Syl. ¶ 3, 931 P.2d 1265, *rev. denied* 262 Kan. 962 (1987). Allegations must be made of shocking and intolerable conduct or continuing mistreatment of a constitutional stature. *Swisher*, 12 Kan. App. 2d at 184-85.

The question of whether an individual's constitutional rights have been violated is a question of law. *Hearst v. State*, 30 Kan. App. 2d 1052, 1055-56, 54 P.3d 518 (2002). An appellate court's review is unlimited. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

### Exhaustion of administrative remedies

The KDOC asserts that McComb failed to exhaust his administrative remedies when he waived his hearing before the Board on the third attempt to revoke McComb's postrelease supervision. The KDOC correctly points out that if a party withholds an issue from determination by an agency, the issue is not properly preserved for judicial review. *Shields v. J.E. Dunn Constr. Co.*, 24 Kan. App. 2d 382, 387, 946 P.2d 94 (1997). The KDOC contends that, had McComb requested a third hearing, the Board had the option to continue McComb's conditional release pursuant to K.S.A. 2003 Supp. 75-5217(b). The KDOC argues that the Board's action could not be considered "arbitrary and capricious," when the Board never actually made any findings or orders relating to McComb's third expulsion from the SATP.

McComb counters by arguing that the parties stipulated to the likely result of the Board hearing. McComb further argues that he was not required to seek an administrative remedy when the remedy is known to be inadequate. Specifically, McComb asserts that there "is no reason to believe that a third set of hearings [before the KDOC and the Board] would have yielded a different result."

An allegation that a party is required to or has failed to exhaust administrative remedies presents a question of law, and appellate court review is unlimited. *NEA-Coffeyville v. U.S.D. No. 445*, 268 Kan. 384, Syl. ¶ 3, 996 P.2d 821 (2002).

The district court found that the parties had "stipulated" that McComb's release would have been revoked had he requested a third hearing before the Board. No such written stipulation was

ever filed in this case. However, the parties conducted a lengthy "stipulations hearing" where McComb offered to stipulate to that result. The KDOC never disagreed with the proposed stipulation and said nothing to prevent the court from believing that it agreed with McComb's analysis. Upon reviewing the entire transcript of the "stipulations hearing," we conclude that the district court reasonably believed that the parties were stipulating to the eventual outcome of the hearings.

More importantly, a party is not required to seek an administrative remedy when the remedy is known to be inadequate. *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 24 P.3d 128 (2001). In *Pierpoint*, an inmate made two requests for the assistance of counsel at a disciplinary hearing, which were both denied. The inmate subsequently filed a 60-1501 petition without requesting an agency hearing, and the KDOC responded by claiming that the inmate had failed to exhaust his administrative remedies. The court found that, under these circumstances, there was no reason to believe that another request for the presence of counsel would have yielded a different result. The court held the inmate was not required to exhaust his administrative remedies and noted that "[e]xhaustion of administrative remedies is not required when administrative remedies are inadequate or would serve no purpose." 271 Kan. 620, Syl. ¶ 2; see *State ex rel. Pringle v. Heritage Baptist Temple, Inc.*, 236 Kan. 544, 549, 693 P.2d 1163 (1985).

McComb's situation is similar to the facts of *Pierpoint*. McComb had already exhausted his administrative remedies *for the same violation* on two prior occasions within the previous 12 months. Although the Board technically had the power to continue McComb's conditional release, from a practical standpoint, there is absolutely no evidence that the Board would have departed from its previous position. Under the specific facts of this case, the administrative remedies presented to McComb were inadequate, and the district court did not err in retaining jurisdiction after McComb waived his third round of administrative hearings.

*McComb's sentence*

Before turning to the merits of McComb's constitutional claims,

we must understand the provisions of his sentence under the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.* Every criminal sentence under the KSGA consists of two components: a determinative prison sentence and a period of postrelease supervision. See K.S.A. 2003 Supp. 21-4704; K.S.A. 2003 Supp. 21-4705. Postrelease supervision means "the release of a prisoner to the community after having served a period of imprisonment . . . subject to conditions imposed by the Kansas parole board and to the secretary of corrections' supervision." K.S.A. 21-4703(p). Although similar to "parole," which applies to prisoners sentenced prior to the enactment of the KSGA, postrelease supervision is distinctive because it is actually imposed by the court as a component of the original sentence. Understanding the provisions of McComb's sentence is essential in weighing the merits of his constitutional claims.

### Fifth Amendment claim

Although McComb's K.S.A. 2003 Supp. 60-1501 petition briefly references an alleged violation of the Fourth Amendment to the United States Constitution and § 15 of Kansas Constitution Bill of Rights, this argument was never advanced in district court or on appeal. McComb's primary argument in district court and on appeal is that the SATP condition of his postrelease supervision violates his privilege against self-incrimination pursuant to the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights.

Initially, the KDOC contends that this issue is not properly before the court. The KDOC asserts that the district court ruled adversely to McComb on his Fifth Amendment claim and McComb failed to cross-appeal that ruling. This assertion is incorrect. The district court ruled that "under most circumstances" a treatment program requiring an admission of guilt does not constitute a Fifth Amendment violation. However, the district court ultimately made no specific finding relating to whether McComb's Fifth Amendment right was violated. Instead, the district court ruled in McComb's favor on other grounds. Thus, McComb is not precluded from asserting his Fifth Amendment claim on appeal.

McComb argues that the SATP condition of his postrelease supervision violates his constitutional privilege against self-incrimination. The Fifth Amendment and § 10 of the Kansas Constitution Bill of Rights provide that no person shall be compelled in any criminal case to be a witness against himself or herself. It has long been held that this privilege not only permits a person to refuse to testify against himself or herself at a criminal trial in which he or she is a defendant, but it also "privileges him not to answer official questions put to him in any other proceedings, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 38 L. Ed. 2d 274, 94 S. Ct. 316 (1973).

There are no cases which address the precise issue before this court. The KDOC relies primarily on *McKune v. Lile*, 536 U.S. 24, 153 L. Ed. 2d 47, 122 S. Ct. 2017 (2002). Lile brought an action under 42 U.S.C. § 1983 (1994) against Kansas prison officials, alleging that the prison SATP and corresponding regulations and policies violated his Fifth Amendment right against self-incrimination. Lile was convicted of rape, and the prison SATP required him to admit guilt for his crime. The program also required Lile to complete a sexual history form, which detailed all prior sexual activities, regardless of whether such activities constituted uncharged criminal offenses. Lile refused to participate in the program. As a result, his prison status was reduced from Level III to Level I, causing a reduction in Lile's visitation rights, access to a personal television, and other prison privileges.

The United States Supreme Court held that the adverse consequences faced by Lile for refusing to participate in the prison SATP were not so severe as to amount to compelled self-incrimination. 536 U.S. at 35-48. The Court stated:

"The Kansas SATP represents a sensible approach to reducing the serious danger that repeat sex offenders pose to many innocent persons, most often children. The State's interest in rehabilitation is undeniable. There is, furthermore, no indication that the SATP is merely an elaborate ruse to skirt the protections of the privilege against compelled self-incrimination. Rather, the program allows prison administrators to provide to those who need treatment the incentive to seek it." 536 U.S. at 48.

The importance of a prison SATP for convicted sex offenders was specifically addressed by the Court in *Lile*. "When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault. [Citation omitted.] States thus have a vital interest in rehabilitating convicted sex offenders." 536 U.S. at 33.

As for the importance of a convicted sex offender admitting guilt, the *Lile* Court stated that "[a]cceptance of responsibility is the beginning of rehabilitation." 536 U.S. at 47. The Court further noted that "[t]he fact that these consequences are imposed on prisoners, rather than ordinary citizens, moreover, is important in weighing respondent's constitutional claim." 536 U.S. at 36.

McComb correctly points out that *Lile* is not controlling authority. *Lile* applies to a prison SATP for convicted sex offenders who are still incarcerated. Failure to successfully complete the SATP in *Lile* only resulted in the loss of prison privileges. Conversely, McComb faced the loss of his liberty for failure to participate in the SATP while on postrelease supervision.

McComb cites *State v. Imlay*, 249 Mont. 82, 90-91, 813 P.2d 979 (1991), where the Montana Supreme Court held that a suspended sentence could not be revoked for a failure to complete a sexual therapy program, where the basis for the failure to complete the program was a refusal to admit guilt. Other state courts have held that a probationer has a valid Fifth Amendment privilege not to be compelled to admit guilt for the crime of conviction. See *James v. State*, 75 P.3d 1065 (Alaska App. 2003); *In re Butts*, 582 S.E.2d 279, 286-88 (N.C. App. 2003); *State ex rel. Tate v. Schwarz*, 654 N.W.2d 438 (Wis. 2002).

Although not cited by either party, we find the Kansas Supreme Court decision in *Bankes v. Simmons*, 265 Kan. 341, 963 P.2d 412, *cert. denied* 525 U.S. 1060 (1998), to be relevant. The facts of *Bankes* are similar to the facts of *Lile*. Bankes, who had been convicted of indecent liberties with a child, refused to participate in a prison SATP which required admission of guilt for his crime. His refusal to participate resulted in a loss of prison privileges and good time credits for parole eligibility. Bankes filed a K.S.A. 60-1501 petition attacking the constitutionality of the regulations establish-

ing the prison SATP. Bankes' petition was summarily dismissed by the district court.

The Kansas Supreme Court reversed, holding that the KDOC's refusal to award good time credits for parole eligibility violated Bankes' ex post facto rights, since the regulations were adopted after Bankes' conviction and imprisonment. 265 Kan. at 353. However, the court also addressed Bankes' claim that the SATP violated his Fifth Amendment privilege against self-incrimination. In ruling there was no Fifth Amendment violation, the court noted language from *Minnesota v. Murphy*, 465 U.S. 420, 435 n.7, 79 L. Ed. 2d 409, 104 S. Ct. 1136, *reh. denied* 466 U.S. 945 (1984), and concluded that the KDOC, in administering its SATP, *"can insist that the petitioner admit responsibility, so long as his or her admission is not used against the petitioner in later criminal proceedings."* (Emphasis added.) 265 Kan. at 352-53.

According to this language in *Bankes*, any information that an inmate is compelled to disclose as a condition of participating in a prison SATP cannot be used against the inmate in subsequent criminal proceedings. Arguably, this language is dicta because *Bankes* was not decided on Fifth Amendment grounds. Nevertheless, if this language is indeed the law of Kansas, it forecloses the possibility of the SATP condition being a Fifth Amendment violation.

In the absence of controlling authority, we conclude that the SATP condition requiring McComb to accept responsibility for his crime does not violate his Fifth Amendment privilege against self-incrimination. A convicted sex offender who claims innocence does not have greater constitutional rights than one who does not claim innocence. Furthermore, the cases which hold that a probationer cannot be required to admit guilt rely, in part, on the fact that such individuals still face the possibility of incarceration for their crimes. Probationers often have pending appeals or postconviction remedies which could affect the outcome of their cases. Here, McComb has served his entire sentence except for the postrelease supervision term and only faces further incarceration if he *fails* to admit his crime. It is hard to understand how any statement made now by McComb about his underlying crime could be used to further

incriminate him. If the language of *Bankes* applies to McComb, any admission of responsibility by McComb in the SATP cannot be used against him in a subsequent criminal proceeding.

We note that drug offenders are faced with a similar predicament as McComb. The KDOC requires all persons convicted of drug offenses to successfully complete a substance abuse treatment program as a condition of postrelease supervision. Such programs require the offender to admit to a drug problem as the first step in rehabilitation. Failure to participate in such substance abuse treatment programs also can result in the revocation of postrelease supervision.

The admission of guilt as a necessary step toward rehabilitation has long been recognized in criminal jurisprudence. As noted by the Court in *Lile*, "the downward adjustment for acceptance of criminal responsibility" is an integral part of federal criminal law and is specifically provided for in the United States Sentencing Commission Guidelines Manual § 3E 1.1 (Nov. 2002). *Lile*, 536 U.S. at 47.

McComb's argument that he is trapped in a revolving door of incarceration simply because he proclaims his innocence is persuasive and has merit. On the other hand, adopting McComb's argument would necessarily result in a convicted sex offender deciding whether treatment was an appropriate condition of release. An offender could always avoid treatment by claiming innocence of the crime. Resolving this predicament against the offender, the court in *Bankes* concluded:

"This is not a terribly satisfactory outcome. Bankes stands convicted of the offense, but maintains his innocence. He would consequently be forced to admit guilt which he does not acknowledge in order to participate in SATP . . . . Whether Bankes and society will benefit from Bankes' treatment under those circumstances is not for the court to decide in this case. However, this situation does not appear to rise to the level of a Fifth Amendment violation." 265 Kan. at 353.

Finally, we note that the only issue before this court is whether McComb can be required to accept responsibility for his crime of conviction as a condition of postrelease supervision. The KDOC presented evidence that had McComb remained in the SATP, he

may have also been required to discuss his entire sexual history, regardless of whether such activities constituted uncharged criminal offenses. Whether this requirement would violate McComb's Fifth Amendment right is a question we are not deciding. McComb's postrelease supervision was revoked because he failed to accept responsibility for his crime of conviction. This was the only SATP condition addressed in district court, and our ruling is limited to the facts presented.

### Other constitutional claims

McComb's K.S.A. 2003 Supp. 60-1501 petition raised no additional constitutional claims. However, at one point during the hearing in district court, McComb's counsel argued that the SATP amounted to "cruel and unusual punishment." Thus, we will address whether the SATP condition of McComb's postrelease supervision violates the Eighth Amendment to the United States Constitution.

The Eighth Amendment prohibits "cruel and unusual punishment." Section 9 of the Kansas Constitution Bill of Rights, which forbids "cruel or unusual punishment," has been construed in the same manner as the Eighth Amendment. *State v. Scott*, 265 Kan. 1, 5, 961 P.2d 667 (1998); see *Murphy v. Nelson*, 260 Kan. 589, 597, 921 P.2d 1225 (1996). Punishments are cruel and unusual either by the method of punishment or the length of sentence. *Scott*, 265 Kan. at 8-9.

The constitutional prohibitions against cruel and unusual punishment have been found to prohibit punishment that either inflicts wanton pain or is grossly disproportionate to the severity of the crimes. *Turner v. Maschner*, 11 Kan. App. 2d 134, 134, 715 P.2d 425, *rev. denied* 239 Kan. 695 (1986) (citing *Rhodes v. Chapman*, 452 U.S. 337, 348, 69 L. Ed. 2d 59, 101 S. Ct. 2392 [1981]). Kansas courts have defined cruel and unusual punishment to mean treatment which is "inhumane, barbarous, or shocking to the conscience. [Citation omitted.]" *Turner*, 11 Kan. App. 2d at 134.

On appeal, McComb asserts that his "method of punishment" is cruel and unusual. McComb does not cite any case law to support his argument; instead he simply states that because he "has already

served his sentence for the crime of conviction, his failure to admit guilt is being punished as a new offense. This punishment for maintaining innocence shocks the conscience." As previously discussed, however, McComb's postrelease supervision term constitutes a portion of his original sentence. Thus, McComb's failure to admit guilt is not being punished as a new offense.

Furthermore, the United States Supreme Court has already found that the "Kansas SATP represents a sensible approach to reducing the serious danger that repeat sex offenders pose to many innocent persons, most often children." *Lile*, 536 U.S. at 48. It has also been noted by the United States Supreme Court that "sex offenders are a serious threat in this nation." *Lile*, 536 U.S at 32. A State has a strong interest in the rehabilitation of sex offenders. 536 U.S. at 33. Therefore, a requirement that a convicted sex offender successfully complete a recommended SATP in order to facilitate rehabilitation does not appear to be inhumane, barbarous, or shocking to the conscience.

In *Carroll v. Simmons*, 89 Fed. Appx. 658, 660, 2004 WL 206329 (10th Cir. 2004), an inmate brought an action under 42 U.S.C. §1983 (2000) against Kansas prison officials alleging that his refusal to participate in the prison SATP resulted in a "loss of good-time credits, denial of parole hearings, and a lengthening of his sentence for refusing to make a false confession." Carroll claimed this punishment constituted an Eighth Amendment violation. The Tenth Circuit Court of Appeals held: "We again conclude that the loss of certain privileges and good time credits due to a refusal to participate in a treatment program designed to rehabilitate sex offenders does not rise to the level of cruel and unusual punishment." *Carroll*, 89 Fed. Appx. at 661-62 (citing *Gwinn v. Awmiller*, 354 F.3d 1211, 1227-28 [10th Cir. 2004]).

The inmate in *Carroll* risked an extended term of incarceration if he refused to participate in the program. Likewise, McComb faced the possibility of serving the remainder of his postrelease sentence in prison for refusing to participate in the program. The factual differences between McComb's situation and the inmate in *Carroll* are not so striking as to warrant a different outcome. McComb's Eighth Amendment argument is without merit.

Finally, McComb argues on appeal that the SATP condition violates his due process and equal protection rights under the Fourteenth Amendment to the United States Constitution. McComb acknowledges that these arguments were not raised in district court. Issues not raised before the district court cannot be raised for the first time on appeal. *Board of Lincoln County Comm'rs v. Nielander*, 275 Kan. 257, 268, 62 P.3d 247 (2003).

*Conclusion*

McComb is still serving his original sentence for aggravated indecent liberties with a child. Until McComb completes his post-release supervision term, he is subject to the KDOC's supervision. Therefore, McComb is not an "ordinary citizen" and any constitutional analysis must take that into consideration, especially when weighing the importance of rehabilitation against McComb's liberty interest. *Lile*, 536 U.S. at 36.

The SATP condition of McComb's postrelease supervision is reasonably related to his rehabilitation and the protection of the community. The requirement that McComb accept responsibility for his crime is constitutional. The enforcement of such a condition through the revocation of McComb's release is likewise constitutional. Since the Board's actions were constitutional, we do not believe they can be deemed arbitrary and capricious and an abuse of discretion. The Board's discretion in revoking a conditional release is broad, and a court has no authority to substitute its discretion for that of the Board. *Swisher*, 12 Kan. App. 2d at 185. Accordingly, we conclude that the district court erred in granting McComb's K.S.A. 2003 Supp. 60-1501 petition.

Reversed.