NOT DESIGNATED FOR PUBLICATION

No. 114,557

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WALTER MILLER,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; JAMES FLEETWOOD, judge. Opinion filed December 2, 2016. Reversed and remanded with directions.


*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.


*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., MCANANY and STANDRIDGE, JJ.


*Per Curiam*: Walter Miller appeals the district court's summary denial of his K.S.A. 60-1507 motion. After Miller was convicted of failing to register under the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 *et seq.*, the Kansas Prisoner Review Board (Board) revoked his lifetime postrelease supervision and placed him in prison for the remainder of his life. In his petition, Miller claimed the Board's decision to revoke his lifetime postrelease supervision and send him to prison for the rest of his life, as mandated by K.S.A. 2012 Supp. 75-5217(c), constitutes cruel and unusual punishment

under § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. Miller claims the district court:  (1) erred when it concluded that he failed to present any issue for which relief may be granted under K.S.A. 60-1507; and (2) failed to make appropriate findings under the manifest injustice standard regarding whether he should be allowed to pursue an out-of-time K.S.A. 60-1507 motion.

On June 23, 2008, Miller pled guilty to attempted aggravated indecent liberties with a child, a severity level 6 offense under K.S.A. 21-3301 and K.S.A. 21-3504(a)(2)(A)(c), as well as sexual battery, a class A person misdemeanor pursuant to K.S.A. 21-3517. On August 1, 2008, the district court sentenced Miller to 18 months in prison with a consecutive 12-month jail sentence and lifetime postrelease supervision, which was suspended in favor of 24 months of probation. Miller did not file a direct appeal of his convictions or sentence.

Miller's probation was revoked in May 2010 after he stipulated to violating the terms of his probation. His revocation was not predicated on the commission of a sex crime. It was based on his failure to complete a treatment program, failure to pay costs, and possession of drugs and drug paraphernalia, though he was never prosecuted for these offenses. Miller was ordered to serve a modified sentence of 18 months in prison plus 6 months in jail. As part of that revocation, the district court imposed Miller's lifetime postrelease term. Miller did not appeal. He later served his sentence and was released on lifetime postrelease supervision.

In his K.S.A. 60-1507 motion, Miller states that while on lifetime postrelease supervision he was convicted in 2012 of failing to register under KORA, K.S.A. 22-4901 *et seq.*, a level 6 felony. The underlying criminal case for this conviction is not included in the record on appeal, but Miller claims his conviction was based on his failure to inform registration officials that he had moved from a homeless shelter to the home of a

friend. As a result of this new conviction, the Kansas Prisoner Review Board revoked his postrelease supervision under K.S.A. 2012 Supp. 75-5217(c) and sent Miller to prison for the rest of his life.

In May 2015, nearly 7 years after his original conviction, Miller filed a K.S.A. 60-1507 motion accompanied by a motion to allow his K.S.A. 60-1507 motion to be filed out of time. Miller argued his sentence of lifetime postrelease supervision was unconstitutional under the Eighth Amendment of the United States Constitution and § 9 of the Kansas Constitution Bill of Rights. Miller asserted that the imposition of a life sentence without parole for a level 6 person felony constituted cruel and unusual punishment. Miller alleged that the cruel and unusual nature of his sentence should satisfy the manifest injustice finding necessary for his untimely motion.

In July 2016, the district court summarily denied Miller's motion and his motion for appointment of counsel. The court found that Miller failed to assert any issues for which relief may be granted under K.S.A. 60-1507, noting that his argument should have been raised in a direct appeal from sentencing and that a K.S.A. 60-1507 motion should not be used as a substitute for a direct appeal.

On appeal, Miller argues the district court erred in summarily denying his K.S.A. 60-1507 motion on the grounds that he presented no justiciable issue. Miller contends that the imposition of a life sentence without the possibility of parole constituted cruel and unusual punishment, and the context of his K.S.A. 60-1507 motion did not provide a procedural bar to relief. Miller maintains that the district court should have granted an evidentiary hearing to explore his claims. The State argues that Miller did not present any claim that could be addressed in a K.S.A. 60-1507 motion, and the district court properly denied the motion as untimely.

3

Initially, the State questions whether Miller properly filed the motion under K.S.A. 60-1507, challenging whether Miller is a

> "prisoner in custody under sentence of a court of general jurisdiction claiming the right to be released upon the ground that the sentence was imposed in violation of the constitution or laws of the United States, or the constitution of laws of the state of Kansas, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law . . . ." K.S.A. 60-1507(a).

The State asserts that the district court did not have any jurisdiction over the term of imprisonment Miller is currently serving because Miller served his sentence in full for his 2008 convictions. The State suggests a possible remedy under K.S.A. 60-1501, stating that Miller is "only in custody as a result of the actions of the Kansas Department of Corrections." See K.S.A. 60-1501(a) ("[A]ny person in this state who is detained, confined or restrained of liberty on any pretense whatsoever . . . physically present in this state may prosecute a writ of habeas corpus in the supreme court, court of appeals or the district court of the county in which such restraint is taking place.").

Both K.S.A. 60-1507 and K.S.A. 60-1501 actions are civil rather than criminal in nature.

> "The distinction between K.S.A. 60-1501 and K.S.A. 60-1507 has generally been held to be that a 1507 motion is a procedure by which a prisoner may challenge his or her conviction or sentence, while a 1501 petition is a procedural means through which a prisoner may challenge the mode or conditions of his or her confinement, including administrative actions of the penal institution. [Citations omitted.] A 1507 petition is properly filed in the sentencing court, while a 1501 petition is properly filed in the county of confinement. [Citation omitted.]" *Safarik v. Bruce*, 20 Kan. App. 2d 61, 66-67, 883 P.2d 1211, *rev. denied* 256 Kan. 996 (1994).

4

Under Kansas law, pro se pleadings are to be construed liberally. *State v. Kelly*, 291 Kan. 563, 565, 244 P.3d 639 (2010). As such, Kansas courts give effect to the pleading's content rather than the labels and forms used to communicate the petitioner's arguments. A defendant's failure to cite the correct statutory grounds for his or her claim is immaterial. See *Bruner v. State*, 277 Kan. 603, 505, 88 P.3d 214 (2004) (K.S.A. 60-1507 motion construed as a request for DNA testing under K.S.A. 21-2512).

After reviewing the pleadings, we hold that the district court should have construed Miller's motion as a K.S.A. 60-1501 petition rather than a K.S.A. 60-1507 motion.

Under the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2015 Supp. 21-6801 *et seq.*, a criminal sentence contains two separate components: a determinative prison sentence and a period of postrelease supervision. See K.S.A. 2015 Supp. 21-6804; K.S.A. 2015 Supp. 21-6805; *McComb v. State*, 32 Kan. App. 2d 1037, 1043, 94 P.3d 715, *rev. denied* 278 Kan. 846 (2004). Here, Miller is not attacking his determinative sentence. Rather, he is attacking the constitutionality of K.S.A. 2012 Supp. 75-5217(c) as it is applied in this specific case, which required the Kansas Parole Board to revoke his lifetime postrelease supervision and place him in prison for life without the possibility of parole. Miller is attacking the mode of his confinement as cruel and unusual punishment, which was triggered by the revocation of his postrelease supervision under K.S.A. 2012 Supp. 75-5217(c).

Miller's 18-month determinative sentence—which he had served in full—turned into a life sentence when the Kansas Parole Board revoked his lifetime postrelease supervision as required by K.S.A. 2012 Supp. 75-5217(c) for failure to register under KORA. Miller could have attacked his determinative sentence under K.S.A. 60-1507, but he is now attacking the mode of his present confinement. Because we find that Miller's

5

motion should have been construed as a K.S.A. 60-1501 petition, we do not need to consider whether manifest injustice exists to excuse the untimely filing of his motion. See K.S.A. 60-1507(f) (time limitations).

When determining whether a K.S.A. 60-1501 petition states a claim for relief, district courts examine the petition and the contents of any attachments to determine if the petition alleges "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). The district court is entitled to summarily dismiss a K.S.A. 60-1501 petition only "[i]f it plainly appears from the face of the petition and any exhibits attached thereto that the plaintiff is not entitled to relief in the district court." K.S.A. 2015 Supp. 60-1503(a). See 289 Kan. at 648-49.

We exercise unlimited review of a summary dismissal. 289 Kan. at 649. In doing so, we are required to accept as true the allegations in the petition to determine whether the facts alleged and the reasonable inferences that can be drawn from them state a claim for relief. *Schuyler v. Roberts*, 285 Kan. 677, 679, 175 P.3d 259 (2008). See *Hill v. Simmons*, 33 Kan. App. 2d 318, 320, 101 P.3d 1286 (2004) (court must determine whether a claim is stated on any possible theory, not just the theory asserted by the petitioner). A district court errs when it summarily dismisses a K.S.A. 60-1501 petition if the petitioner has stated a claim under any possible theory. See *Washington v. Roberts*, 37 Kan. App. 2d 237, 152 P.3d 660 (2007).

In his petition, Miller asserts a case-specific challenge to the Board's decision to revoke his postrelease supervision, claiming the sentence amounts to cruel and unusual punishment. Section 9 of the Kansas Constitution Bill of Rights prohibits cruel or unusual punishment. A punishment may be impermissibly cruel or unusual "'if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and

6

offends fundamental notions of human dignity.'" *State v. Spear*, 297 Kan. 780, 799, 304 P.3d 1246 (2013) (quoting *State v. Gomez*, 290 Kan. 858, Syl. ¶ 9, 235 P.3d 1203 [2010]).

The Eighth Amendment to the United States Constitution, which has been extended to the states under the Fourteenth Amendment, prohibits cruel and unusual punishment by stating that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Eighth Amendment forbids extreme sentences that are grossly disproportionate to the crime. *Ewing v. California*, 538 U.S. 11, 22, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003).

There are two types of Eighth Amendment challenges that can be made:  (1) case-specific proportionality challenges; and (2) categorical proportionality challenges. See *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); *State v. Mossman*, 294 Kan. 901, 921-22, 281 P.3d 153 (2012). Claims in the first classification are inherently fact-specific, and "'[a]ppellate courts do not make factual findings but review those made by district courts.'" *State v. Gomez*, 290 Kan. 858, 864, 235 P.3d 1203 (2010) (quoting *State v. Thomas*, 288 Kan. 157, 161, 199 P.3d 1265 [2009]). In his petition, Miller makes a case-specific proportionality challenge.

A case-specific analysis under the Eighth Amendment is virtually identical to an analysis under § 9 of the Kansas Constitution Bill of Rights. "The Cruel and Unusual Punishment Clauses of the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights are nearly identical and are to be construed similarly." *State v. Scott*, 265 Kan. 1, Syl. ¶ 1, 961 P.2d 667 (1998).

In his petition, Miller alleged the Kansas Prisoner Review Board violated § 9 of the Kansas Bill of Rights and the Eighth Amendment's prohibition against cruel and

unusual punishment. This amendment prohibits punishments which are "cruel and unusual either by the method of punishment or the length of sentence. [Citation omitted.]" *McComb*, 32 Kan. App. 2d at 1048. Kansas courts have defined cruel and unusual punishment as treatment which is "'inhumane, barbarous, or shocking to the conscience. [Citations omitted.]'" 32 Kan. App. 2d at 1048.

Miller completed the prison portion of his sentence for his 2008 convictions and was serving his postrelease supervision when he was convicted of a new crime in 2012—failing to register under KORA. The most serious crimes in our sentencing grid are level 1 offenses. The least serious are level 10 offenses. Miller's crime of failing to register under KORA is a level 6 nonperson offense.

> "The sentencing guidelines are based on two controlling factors: crime severity and criminal history of the defendant. See K.S.A. 2014 Supp. 21-6804(c). In scoring criminal history, a distinction is made between person crimes and nonperson crimes. See K.S.A. 2014 Supp. 21-6809; [citation omitted]. Under the sentencing guidelines, designation of a crime as person or nonperson depends upon the nature of the offense. Crimes which inflict, or could inflict, physical or emotional harm to another generally are designated as person crimes. Crimes which inflict, or could inflict, damage to property generally are designated as nonperson crimes. [Citation omitted.] Generally, person crimes are weighted more heavily than nonperson crimes for criminal history purposes. [Citation omitted.]" *State v. Waggoner*, 51 Kan. App. 2d 144, 154-55, 343 P.3d 530, *rev. denied* 303 Kan. 1081 (2015).

The Board found that Miller violated the conditions of his lifetime postrelease supervision and placed him in prison for life without the possibility of parole as required by K.S.A. 2012 Supp. 75-5217(c). Miller was 31 years old at the time of his new conviction, so it is foreseeable that Miller could serve more than 50 years in prison for a level 6 nonperson offense.

In support for his claim of cruel and unusual punishment, Miller asserts that the facts of his case are very similar to the facts in *State v. Proctor*, No. 104,697, 2013 WL 6726286 (Kan. App. 2013) (unpublished opinion), *petition for rev. denied* April 28, 2014 (*Proctor II*). The *Proctor II* court held that the imposition of lifetime postrelease supervision, as applied to Proctor, violated the prohibition against cruel and unusual punishment under both the Kansas Constitution and the United States Constitution. See also *State v. Proctor*, 47 Kan. App. 2d 889, 895-96, 280 P.3d 839 (2012) (*Proctor I*). Although the holding was limited to the facts in the case, the court considered the fact that Proctor was facing the possibility of life in prison for even a minor nonperson felony if the crime was committed while he was serving lifetime postrelease supervision. K.S.A. 2012 Supp. 75-5217(c) provided that if a violation of the conditions of postrelease supervision results from a conviction for a new felony, "the inmate shall serve the entire remaining balance of the period of postrelease supervision [in prison] even if the new conviction did not result in the imposition of a new term of imprisonment."

In *Proctor I*, the court discussed the possibility of the imposition of a life sentence after the commission of a nonperson felony:

> "Considering the circumstances, the punishment exacted if Proctor were placed on lifetime postrelease supervision and then revoked for a nonperson felony conviction would be grossly disproportionate to the triggering offense and to the whole of his criminal history. This would be one of those rare instances in which the operation of the statutory scheme would call into question the resulting punishment as cruel and unusual." *Proctor I*, 47 Kan. App. 2d at 930.

In *Proctor II*, the court referred to "the extraordinary vice built into lifetime postrelease supervision—the doomsday consequences for later being convicted of any felony." 2013 WL 6726286, at *7. In both decisions, this court concluded that the

9

imposition of lifetime postrelease supervision on Proctor constituted cruel and unusual punishment.

After this court's decision in *Proctor I*, the legislature amended K.S.A. 2012 Supp. 75-5217(c) in 2013. The statute no longer mandates life imprisonment for any new felony conviction committed while serving lifetime postrelease supervision. The 2013 amendment gives the Board discretion to determine the period of confinement to be served. As it is now, the lifetime sentence is not automatic, but may be tailored by the Board. But this change in the law does not assist Miller, who is now faced with the "doomsday consequences for later being convicted of any felony." *Proctor II*, 2013 WL 6726286. If Miller had committed this crime just over a year later, the Board would have had discretion to determine his period of confinement and would not have been required to order him into custody for the remainder of his life.

Unlike Proctor, Miller failed to challenge the imposition of postrelease supervision in his direct appeal. In *Proctor I*, this court discussed the premature procedural posture of the case, noting that the cruel and unusual challenge to lifetime postrelease supervision is based on what may happen in the future as opposed to what has happened. 47 Kan. App. 2d at 896-97. The *Proctor I* court considered the fact that Proctor may be left without a remedy in light of authority requiring the immediate appeal of sentencing issues. 47 Kan. App. 2d at 897-98. In our present case, the hypothetical situation has become a reality, and Miller was ordered to prison for the remainder of his life after committing the crime of failing to register, a victimless nonperson felony. According to Miller, the Board's order imposes a cruel and unusual punishment.

Although Miller did not raise a challenge to the imposition of lifetime postrelease supervision in a direct appeal, we find that Miller may assert his claim of cruel and unusual punishment in a K.S.A. 60-1501 petition under these circumstances. Under

10

K.S.A. 2012 Supp. 75-5217(c), which has now been amended, Miller was ordered to serve a life sentence without any possibility of review or modification. The 2013 amendments to K.S.A. 75-5217(c) now give discretion to the Board to determine the period of confinement upon the conviction of a new felony. Miller's violation occurred a little over a year prior to this amendment. As such, the Board was unable to exercise discretion in ordering Miller to prison for life.

In comparing the facts of his case to those in *Proctor*, Miller asserts that under the criteria set out in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), his sentence constitutes cruel and unusual punishment. Kansas courts analyze challenges under § 9 of the Kansas Constitution Bill of Rights by using the three-factor analysis provided in *Freeman* to determine whether a sentence for lifetime postrelease supervision is a cruel or unusual punishment. See *State v. Ochs*, 297 Kan. 1094, 1107, 306 P.3d 294 (2013). The process involves examining the following *Freeman* factors:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *Freeman*, 223 Kan. at 367.

11

In his petition, Miller explains the facts leading to his convictions of attempted aggravated indecent liberties with a child and misdemeanor sexual battery. At this point in the proceedings, we accept these facts as true:

"[W]hile at his home partying with some friends petitioner received a phone call from S.M. the daughter of an acquaintance, requesting that petitioner come pick her and a friend up at a theater, petitioner agreed to do so and did. After picking them up and starting to take them home, (to S.M.'s father's home) S.M. was [adamant] about not wanting to go there her and her dad had been estranged for [a while], when petitioner asked where they wanted to go S.M. said that they wanted to go party at his house, when asked what her parents would say S.M. asserted that she was 18 years old and had been since December and she could do what she wanted, the younger girl D.I.G. stated her parents wouldn't care as she was 17. Petitioner took the girls to his home and they partied, petitioner and S.M. spent a lot of time cuddling and at times D.I.G. would join in and wrestle around with both petitioner and S.M., both girls spent the night at petitioner's home, D.I.G. left going to a different apartment complex with petitioner's roommate after breakfast the next morning. Petitioner and S.M. were going to the grocery store, being driven by a friend of petitioners, but started arguing over the fact that S.M. wanted to stay with petitioner and he did not want her to do so, thinking that she should go home, the ensuing argument caused petitioner to get out of the car and walk off, S.M. followed still trying to argue about staying at petitioner's. When a police officer stopped them and after questioning them, recognizing S.M. as a run-away from the childrens home, arrested petitioner. Petitioner did not know at the time that the girls were both run-aways nor their ages."

In support of his claim of cruel and unusual punishment, Miller points to the following factors:

- Miller is "uneducated with limited intelligence."
- Miller was "effectively drunk" at the time of the crime.

12

- Miller believed what the victims told him about their ages and their home situation.
- Miller describes the sexual contact as nothing more than "heavy petting."
- Miller claims he had little interest in D.I.G. and described "the girls between themselves were more sexual than toward" Miller.
- Miller was originally placed on probation for his crimes.
- Miller's offense was not violent, and the victims suffered no physical injuries.
- Miller claims that there is no evidence that the victims experienced emotional trauma.
- Neither victim was interested in pressing charges, nor did the victims submit a written statement for the court's consideration.
- Miller had no previous criminal history, and his only previous contact with law enforcement was due to traffic infractions.
- Miller's new felony conviction for failing to register under KORA was a nonviolent, nonperson felony. It arose when he failed to register after moving from a homeless shelter to the home of a friend.

We also note that Miller was 27 years old at the time he committed the crimes that led to the original convictions. D.I.G., the victim of the attempted aggravated indecent liberties conviction, was 14 years old at the time of the crime. S.M., the victim of the misdemeanor sexual battery, was 17 years old at the time of the crime.

The record also includes references to the fact that Miller has a disability, which may lend support to his claim that he is "uneducated with limited intelligence." At his plea hearing, Miller confirmed that he had a caretaker and was receiving benefits for a reading and writing disability. Miller completed 11 years of school through special

13

education. Miller stated he is unable to read or write because of a chemical imbalance, but he was unsure of his specific diagnosis. At his sentencing hearing, Miller indicated that he received disability benefits because he was unable to work due to the chemical imbalance.

In reviewing Miller's petition, we are required to accept Miller's allegations as true to determine whether there is a possibility of "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson*, 289 Kan. at 648. See *Schuyler*, 285 Kan. at 679. After reviewing Miller's petition, we find that Miller made factual assertions supporting his claim of cruel and unusual punishment. Miller's felony conviction, which triggered his incarceration for life, resulted from his failure to register a new address. Because of his oversight in notifying the registering authorities of a change in address, the Board followed K.S.A. 2012 Supp. 75-5217(c) and placed him in prison for the remainder of his life. Miller's petition contains information regarding his underlying conviction, which suggests that his circumstances may be similar to those in *Proctor I* and *II*. Under these circumstances, we remand to the district court for an evidentiary hearing on his case-specific constitutional challenge to the revocation of his lifetime postrelease supervision.

As previously stated, we direct the district court to construe Miller's motion as a K.S.A. 60-1501 petition. Miller is challenging the mode of his confinement as cruel and unusual punishment, as triggered by the revocation of his postrelease supervision under K.S.A. 2012 Supp. 75-5217(c). K.S.A. 60-1501 actions should be filed in the county of confinement rather than the county of sentencing. See *McKinney v. State*, 27 Kan. App. 2d 803, 9 P.3d 600 (2000). K.S.A. 60-611 provides that an action that is commenced in the wrong venue is to be transferred rather than dismissed. See *Cansler v. State*, 234 Kan. 554, 573, 675 P.2d 57 (1984).

Although an action filed in the wrong county may be dismissed for lack of jurisdiction, in this case the district court should transfer the case to the correct county under K.S.A. 60-611. See *Yancey v. State*, No. 111,003, 2015 WL 770204, at \*4 (Kan. App. 2015) (unpublished opinion); *Hobson v. State*, No. 90,841, 2004 WL 2047545, at \*1-2 (Kan. App. 2004) (unpublished opinion). The sentencing court may lack jurisdiction, but transferring the case to the proper county serves "the interest of administrative and judicial economy." 2004 WL 2047545, at \*2. If Miller filed the petition in the wrong county, the district court should transfer the action to the proper county for further consideration.

Reversed and remanded with directions.